# JUNE TERM.

## WHEELING.

### BEVERLIN *v.* BEVERLIN.

Submitted June 9, 1887.—Decided June 25, 1887.

1. MARRIAGE—COMMON-LAW.

    Common-law marriages, when contracted in this State, are not recognized by our courts as valid.

2. MARRIAGE—STATUTORY.

    No marriage contracted in this State is valid, when it affirmatively appears that it had not been solemnized according to the requirements of our statute on that subject, although the parties may thereafter have associated and cohabited together as husband and wife.

*J. W. Mason* and *B. F. Martin* for appellant.

*S. P. McCormick* for appellee.

SNYDER, JUDGE :

Suit in equity instituted November 20th, 1884, by Elizabeth Beverlin against Israel A. Beverlin in the Circuit Court of Taylor county, for a divorce, *a mensa et thoro* and for alimony. In the original bill the plaintiff alleged, that she was lawfully married to the defendant in the State of Pennsylvania, in June, 1861; that at that time she was a widow and her name was Elizabeth Foster, and that from the date

of said marriage until October, 1884, she and the defendant lived, associated and cohabited with each other as husband and wife; that in October, 1884, the defendant by his harsh, cruel and inhuman treatment compelled her to abandon home and children and has since refused to permit her to return, &c.

In April, 1885, the defendant filed his answer to said bill denying that he and the plaintiff had ever been married, and averred that in June, 1861, the plaintiff had a lawful husband, one Edward Foster, living in Belmont county, Ohio, and that at the time of the alleged marriage with defendant she had a suit pending for a divorce from said Foster in the court of common pleas of said Belmont county which was afterwards dismissed at her costs; that said Foster continued to be the husband of the plaintiff until October 31st, 1873, when he died.

In July, 1885, the plaintiff filed an amended bill in which she repeats that she had been married to the defendant at the time and place stated in her original bill, and by way of amendment she avers, that in the fall of 1873 she learned that one Edward Foster had recently died in Belmont county, and she thereupon conferred with the defendant as to the possibility of said Foster being her former husband and the probable effect on their marriage and the action, if any, they should take in relation thereto. The bill then avers, that "finally for prudential reasons it was determined to take no public action, but that plaintiff and defendant would and they did mutually consent and agree to and did re-affirm their former marriage, and became and continued to be what, in truth and in fact, they had been theretofore, husband and wife, and that thereafter and from that day henceforth to and until the — day of October, 1884, at the town of Grafton, State of West Virginia, she was and continued to be the wife of the defendant, living and cohabiting with him as such, performing all the duties of a devoted wife, and he, the defendant, so holding the plaintiff out to all persons as such, and represented to all persons with whom plaintiff and defendant were acquainted that plaintiff was his wife, as in fact she was."

The depositions fully prove that the plaintiff and defend-

ant lived together, cohabited, associated and represented themselves as husband and wife for over twenty years, and that during that time they kept house together and four children were born to them, two of whom are still living. It is also clearly proved, that in June, 1861, at the time the plaintiff alleges she was married to the defendant, the plaintiff was a married woman and the wife of Edward Foster; that both she and the defendant knew this fact, and that she continued to be the wife of said Foster until his death, which occurred October 31, 1873. There is no testimony in regard to the alleged marriage set up in the amended bill as having taken place in 1873, after the death of the plaintiff's husband, Edward Foster, except the deposition of the plaintiff herself. In her first deposition taken before the filing of her amended bill, the plaintiff testifies, that she was married to the defendant June 9, 1861, in West Alexander, Pennsylvania, before a justice whose name she does not remember; that she had never been married to the defendant at any other time; that her former husband, Edward Foster, was then dead and had died long before; that she had seven children by said Foster, and that he had died about 32 years ago. In her deposition taken after the filing of her amended bill the plaintiff testifies, that in 1873 she visited the State of Ohio where she had formerly resided and on her return home to Grafton she informed the defendant, that she had heard her former husband, Edward Foster, had died in Ohio a short time before, and that then she and the defendant "had a talk as to whether it was necessary that we (they) should marry again. He said that it was legal and that we need not marry again. That we will go on as we have been, doing the best we can for our children as long as life shall last." And then in answer to the question, "Did you talk over and agree as to how you should be and live in the future?" she says, "We lived together just as we had been, as man and wife. I was to be his wife and he my husband as long as life should last." This is the whole of the evidence in support of the alleged marriage of 1873.

The testimony of the defendant was not taken, but he in his answer to the amended bill denies positively that he

ever made any statement or agreement such as is asserted by the plaintiff, or that he ever pretended or admitted to her that she was his wife or he her husband as both of them well knew that such was not the fact.

The Circuit Court by its final decree entered April 1, 1886, decided in favor of the plaintiff, awarding to her a divorce, *a mensa et thoro*, from the defendant and requiring him to pay to her $250 annually for her support. From this decree the defendant has appealed.

The first question to be considered is, whether or not any marriage ever took place or existed between the plaintiff and defendant. If there was no marriage or none is shown by proofs, then as a matter of course the decree of the Circuit Court must be reversed and the plaintiff's bill dismissed.

It is distinctly proven both by the depositions and documentary evidence, that the plaintiff was on January 25th, 1838, formally and legally married to Edward Foster in Belmont county in the State of Ohio; that she lived and cohabited with said Foster as her husband from that time until about the year 1859, and had issue from seven to ten children by that marriage ; that she knew Foster was living at the time of her alleged marriage, in June, 1861, with the defendant, and that said Foster continued to be her legal husband until his death in October, 1873. It is consequently impossible that the alleged marriage of June 9th, 1861, could have taken place or been lawful in any respect. The question of marriage, therefore, depends entirely upon the allegations of the amended bill and the testimony in support of them. Both the facts alleged and the proofs to sustain them have been before fully stated. It is insisted for the appellee these show a valid common-law marriage and that such marriage under the circumstances in this case is valid and sufficient in this State.

There is much controversy as to what constitutes a common-law marriage. It always has been and still is a doubtful question in England. (*Regina* v. *Mills*, 10 Cl. & F. 534 ; 1 Bish. on Mar. and Div., §§ 270, 278.) In the American States, where such marriages have been recognized and held valid, there is considerable diversity as to their requisites. In North Carolina, Tennessee, Massachusetts, Maine

and Maryland, some ceremony or celebration seems to be necessary to a valid common-law marriage, and in most or all of these States it has been questioned whether or not the statutes have not superseded common-law marriages, and that a marriage to be valid must be in accordance with the statutes. (*State* v. *Samuel*, 2 Dev. & Bat. 177; *Grisham* v. *The State*, 2 Yerg. 589; *Commonwealth* v. *Munson*, 127 Mass. 459; *State* v. *Hodgskins*, 19 Me. 155; *Dennison* v. *Dennison*, 35 Md. 361, 379.)

The rule is fully as liberal, if not more so, in New York and Pennsylvania as it is in any of the other States. In New York it has been held, that no religious form or ceremony of any kind is essential to the validity of the marriage —all that is required in that State is, that the parties should be capable of contracting, and that they should *actually contract* to be man and wife, but such contract must be proved to the satisfaction of the court, and may be proved by the wife when her testimony is corroborated and entitled to credit. (*Bissell* v. *Bissell*, 55 Barb. 325; *Van Tuyl* v. *Van Tuyl*, 57 Id. 235.)

In Pennsylvania it has been decided, that "marriage is in law a civil contract, not requiring any particular form of solemnization before the officers of church or State, but must be evidenced by words in the present tense, uttered for the purpose of establishing the relation of husband and wife, and should be proved by the signature of the parties or by witnesses present when made; therefore, when the evidence of the contract was the declaration of the wife, that 'about 31 years ago she went to the house of A. S. to live with and keep house for him under a mutual promise and agreement, that they would sustain towards each other the relation of husband and wife, and that they did thus live and cohabit together,' it was held, that there was not proof of a marriage in fact." (*Commonwealth* v. *Stump*, 53 Pa. St. 132.)

I have been unable to find any case in which the courts of Virginia or of this State have ever held that a common-law marriage was held valid. This is certainly a persuasive evidence that such marriages have never been regarded as valid in these States.

Referring to the facts in this case it does not seem to me

that they are sufficient to prove a marriage according to the liberal rule adopted in the States of New York and Pennsylvania. Before any pretense of a legal marriage the parties had lived and cohabited together for over twelve years. It is a well settled rule of law everywhere, that a cohabitation illicit in its origin is presumed to be of that character, unless the contrary be proved, and can not be transformed into matrimony by evidence which falls short of establishing the fact of an actual contract of marriage. Such contract may be proved by circumstances, but they must be such as to exclude the inference or presumption that the former relation continued, and must satisfactorily prove that it had been changed into that of actual matrimony by mutual consent. *Foster* v. *Holey*, 8 Hunn. 68; *Williams* v. *Williams*, 46 Wis. 464; S. C. 32 Am. R. 722; Appeal of Reding F. Ins. and Trust Co., 23 Cont. L. Jour. 472; *Hantz* v. *Sealy*, 6 Brinn. 405.

In the case before us the testimony of the pretended wife is contradictory and so unsatisfactory as to render it extremely improbable and unreliable. But if we admit its credibility it falls far short of establishing any actual contract of marriage. It simply proves the continuance of the illicit association and cohabitation which is shown to have existed between the parties, without interruption, for over twelve years before the alleged marriage. The plaintiff simply says, that she and the defendant did not deem it necessary to marry again as they considered their former illegal marriage legal, and that they thereafter lived together just as they had been doing, as man and wife. There is no semblance of a change in their relations or actual agreement of marriage shown here, and this is all the evidence we have of the alleged marriage.

But in the view this Court takes of the law, it is unnecessary to rest our decision upon the conclusion just indicated. We think our statute has wholly superseded the common law and in effect, if not in express terms, renders invalid all attempted marriages contracted in this State which have not been solemnized in substantial compliance with its provisions. The statute in force in this State in 1873, when it is alleged the marriage now in question occurred, is embraced

93

in chapter 63 of our Code of 1868. The first section of said chapter provides for the issuance of marriage licenses, the third, fourth and fifth sections, by whom and the manner in which marriages ·may be solemnized, and the sixth section is as follows :

" Every marriage in this State shall be under a license, and solemnized in the manner herein provided ; but no marriage solemnized by any person professing to be authorized to solemnize the same, shall be deemed or adjudged to be void, nor shall the validity thereof be in any way affected, on account of any want of authority in such person, if the marriage be in all other respects lawful, and be consummated with a full belief on the part of such persons so married, or either of them, that they have been lawfully joined in marriage ; nor shall any marriage celebrated within this State between the 17th day of April, 1861, and the 1st day of January, 1866, be void by reason of the same having been solemnized without such license."

Statutes regulating marriages have generally and properly been construed as directory and not mandatory. Since marriage is a natural right and one that existed independent of statutes, the commands which a statute may give concerning its solemnization should, if the form of words will permit, be interpreted as mere directions to the officers of the law and to the parties, not rendering void what is done in disregard thereof. Consequently, the doctrine has become established as a general rule, that a marriage good at common law will be held valid notwithstanding the existence of any statute on the subject, unless the statute contains express words of nullity. This rule, however, is not universal. (1 Bish. on Mar. and Div., § 283.) It seems to me therefore, that when the terms of the statute are such that they can not be made effective to the extent of giving each and all of them some reasonable operation without interpreting the statute as mandatory, then such interpretation should be given to it. The statute, under consideration, in express words declares, that " every marriage in this State shall be under a license, and be solemnized in the manner herein provided." It is possible that these words, standing alone, should, under the general rule just stated, be

interpreted as merely directory. But the statute does not stop here. It qualifies these words by provisions which would be wholly useless and unnecessary, if it were intended and should be held that the preceding provisions are simply directory. It is declared that certain marriages shall not "be deemed or adjudged void," because the person solemnizing them did not in fact have authority to do so. It also declares that certain other marriages shall not be void, because they were solemnized without a license. These exceptions or qualifying provisions seem to me to be equivalent to an express declaration that marriages had in this State, contrary to the commands of the statute and not saved by the exceptions, shall be treated as void. It is apparent that the legislature must have interpreted the statute as making the excepted marriages null and void without the excepting clauses, for otherwise the exceptions would be useless and would not have been made. The introduction of the exceptions is necessarily exclusive of all other independent, extrinsic exceptions. The maxim is clear, "*expressum facit cessare tocertum.*" Affirmative specifications exclude implication. (Pot. Dwarr, St. and Const. 221; 3 T. R. 442.) It is, therefore, my conclusion that no marriage or attempted marriage, if it took place in this State, can be held valid here, unless it has been shown to have been solemnized according to our statutes. It is very certain, it seems to me, that no attempted or pretended marriage can be held valid when it affirmatively appears that it has not been so solemnized. There is no pretense that the pretended marriage sought to be established in this case, was solemnized in any respect according to the requirements of the statute. I am, therefore, of opinion that the plaintiff and defendant in this case never were legally married, and that the plaintiff is not entitled to the relief prayed for in her bill.

I have come to this conclusion with less regret, because by the express command of our statute, "The issue of marriage deemed null in law or dissolved by a court shall nevertheless be legitimate." (Sec. 7, ch. 78, Code, p. 485; *Stones* v. *Keeling*, 5 Call. 143; 3 H. & M. 228.)

For the reasons stated, the decree of the Circuit Court must be reversed and the plaintiff's bill dismissed.

REVERSED.    BILL DISMISSED.