# CHARLESTON.

IN THE MATTER OF S. A. MEADE'S ESTATE.

Submitted October 1, 1918.    Decided October 8, 1918.

1. EXECUTORS AND ADMINISTRATORS—*Appointment*—*"Recess."*

    A clerk of a county court has authority to appoint administrators during a recess of such court occasioned by the adjournment of the same to a distant day. The time intervening between the adjournment of such court and such distant day upon which the court re-convenes is a recess of the court within the meaning of the statute. (p. 653).

2. MARRIAGE—*Validity.*

    In order for a marriage contracted in this state to be valid, it must be solemnized in the manner prescribed by statute. (p. 655).

3. SAME—*Solemnization—Presumption.*

    Where it is shown that a man and woman have lived together in the status of man and wife; that their habits have been matrimonial; that they have held themselves out to the public as man and wife; and that their reputation in the neighborhood in which they lived was that of man and wife, a presumption arises that a legal marriage had been theretofore solemnized between them. (p. 656).

4. SAME—*Rebuttal of Presumption.*

    In such case, where the man dies and the reputed widow's' right to administer upon his estate is questioned, and it is shown that no license was ever issued authorizing the marriage of the parties in any of the counties in which they had lived, and such reputed widow fails to testify upon the question of her marriage, although offered an opportunity to do so, the presumption arising from such marital habit or reputation is sufficiently rebutted to warrant the county court's refusal to appoint such reputed widow, or one named by her, to administer upon such estate. (p. 656).

Error to Circuit Court, Mercer County.

In the matter of the estate of S. A. Meade.   From the appointment of H. W. Crockett as administrator, Lula Meade brings error.

*Affirmed.*

*McClaugherty, Scott & Richardson,* for plaintiff in error.
*J. Powell Royall,* and *Sanders, Crockett & Kee,* for defendant in error.

RITZ, JUDGE:

The only controversy involved here is whether the father of S. A. Meade, deceased, or his reputed widow is entitled to administer upon his estate.  A short time after Meade's death the reputed widow made application to the clerk of the county court of Mercer county for the appointment of an administrator for his estate, waiving her right to be appointed as such, but nominating a person whose appointment she desired, as she had a right to do if she was entitled to administration herself.  *Taylor* v. *Virginia-Pocahontas Coal Company,* 78 W. Va. 455; *In re Stollings' Estate,* 82 W. Va. 18, 95 S. E. 446.  The clerk at that time declined to make the appointment for the reason that the county court of said county, according to his construction of the statute, was not in recess.  The fact of this matter is that the court had a few days prior thereto been in regular session, and had adjourned over to a distant day a month in the future.  The clerk contended that, because of the fact that the court had not finally adjourned, it was not in recess under the law, and that he could not make the appointment.  A few days later the father of S. A. Meade applied to the clerk and asked to have an administrator appointed, and the clerk upon his application declined to make the appointment for the same reason that he had declined to make it upon the application of the reputed widow.  Counsel for the father, however, contended that the clerk's construction of the statute was wrong, and that while the court had not finally adjourned, the time between the adjournment and the day fixed for re-convening was a recess of the court, and insisted upon the clerk making the appointment, to the end that the correctness of the clerk's construc-

tion of the statute might be tested.   The clerk thereupon did appoint H. W. Crockett as such administrator.   When the court re-convened about the middle of May, 1918, the clerk reported the appointment of said Crockett as such administrator.   The reputed widow appeared by her counsel and objected to the confirmation of this appointment, and also moved the court to appoint a nominee of her selection.   It was suggested that she was not the widow of the deceased party, had no interest in his estate, and could not make any objection to the confirmation of the appointment of any person that the clerk saw fit to appoint; and further, that she was not entitled to administer or to select the administrator for the same reason.   The court required her to show that she was the widow of the dead man before entertaining her objections to the confirmation of Crockett, or before appointing her or her nominee as administrator.   She objected to being required to make this proof, and a great deal of refined argument is indulged in as to the burden of proof and the requirements of the law in this regard.   It is quite patent under the decisions above cited that if she is the widow of Meade she is entitled to administer upon his estate, or to have a party of her selection to administer thereon.   If she is not the widow, then it is equally patent that the father is entitled to such administration.   That the party representing himself to be the father is such father in fact is not questioned, and the only matter which the court had to determine was whether or not she is the dead man's widow.   It is immaterial that the clerk did not appoint her when she made the first application because if he had appointed her at that time, and had refused to appoint Crockett when he subsequently applied, the same question would have arisen upon the confirmation of her appointment when it was presented to the court for that purpose, and she would have had to prove just exactly the same things in order to sustain her title that she would have to prove in order to put herself in the position to object to the confirmation of Crockett's appointment, or secure her own appointment by the court in session.   If she had been appointed by the clerk, when the confirmation of her appointment was questioned, it would have

been incumbent upon her to show that she was Meade's widow before the appointment would be confirmed. As the case stands, before she is in a position to object to the confirmation of Crockett's appointment and secure her own by the court, she must show exactly the same thing, so that it is not at all material that the clerk did not appoint her in the first instance, inasmuch as it does not in any wise affect her right to be subsequently appointed, if she can make the showing which she would have had to make in order to secure her appointment at any time.

It is suggested that the appointment of Crockett by the clerk of the county court while the court was not actually in session, but had adjourned to a day a month in the future, was absolutely void and was no such appointment as the court could act upon. We do not think this contention can be maintained. The statute provides that the clerk has the authority to appoint administrators in the recess of the court.

What is meant by the recess of the court? Could it be said that where, as in this case, the court, in order to save calling a special term, has adjourned over for thirty days there would be no tribunal having authority to appoint a personal representative in that interim? Clearly the statute was made to cover not only the period that the court was in actual adjournment, that is, the time intervening between final adjournment and the beginning of its next term, but the language is such as to show a clear intention to cover all periods when the court is in recess. The word recess, as used in this section, means when not actually sitting. That is the common acceptation of the term, and we see no good reason for giving to it in this connection a meaning different from that which it ordinarily possesses. See the definition of the term recess in Black's Law Dictionary, p. 996; Bouvier's Law Dictionary. p. 2838; 7 Words & Phrases, 1 series, p. 5998; 4 Words & Phrases, 2 series, p. 206; *In re Gannon*, 69 Cal. 541.

To support her contention that she is the widow of S. A. Meade, the plaintiff in error offered the testimony of her father. He stated that about a year prior to the time he was testifying his daughter and Meade left his house in Russell County, Virginia, with the declared intention of getting mar-

ried; that they shortly returned and announced that they had been married, and that this marriage had occurred in Russell County, Virginia, the county in which both the parties at that time resided; that they staid at his house for a few days and then left, and subsequently, how long after does not appear, removed to Mercer county, West Virginia. It is shown by several witnesses that for two or three months prior to Meade's death she and Meade lived together as husband and wife in the City of Bluefield; they rented a house and occupied it; all the neighbors considered them husband and wife; they conducted themselves toward each other as though they were married, and the people from whom they rented saw no reason to suspect that their relations were not that of husband and wife. She did not herself testify on the hearing, her father making the excuse when the hearing was first had that she was physically unable to attend. Counsel resisting her appointment at that time suggested that it was perfectly satisfactory to them to continue the hearing until such time as she could attend, or until such time as her deposition could be taken upon the question, but this offer was declined by her counsel. To overcome the evidence introduced by her there was offered an affidavit of the clerk of Russell County, Virginia, showing that no marriage license had ever been issued to either of the parties in that county, and also the testimony of the father of the deceased that his son had told him that he was not married, and with his testimony was introduced a letter from his son written but a little while before his death asking his father's advice in regard to getting married. At this hearing, which was held on the 14th day of May, 1918, there were present two members of the county court, and they were unable to agree as to who was entitled to the administration, and for this reason the hearing was adjourned until the first day of July, 1918, with the agreement that when the court re-convened with all three members present the evidence already taken should be read, and such additional evidence offered as either party might desire to present. On the first day of July the court convened with all three members present. The testimony taken on the former hearing was read, and in the meantime the deposition of the

clerk of Russell County, Virginia, was taken, after due notice, which showed simply what his affidavit offered on the previous hearing showed, that is, that no license had ever been issued in his county authorizing the marriage of S. A. Meade to the reputed widow. There was also offered the testimony of the clerk of the county court of Mercer county showing that no such license had been issued in his county. Some additional evidence was also offered to show the marital relations existing between Meade and the party now claiming to be his wodow during the two or three months immediately preceding his death, but the reputed widow still failed to appear as a witness before the court, nor was her deposition taken in support of her contention, although more than six weeks had elapsed since the previous hearing, and her father had testified that her condition was such that her deposition might be taken at any time. Upon this showing the county court held that she had not made out a case entitling her to administration, and confirmed the appointment of Crockett. From that holding she prosecuted an appeal to the circuit court of Mercer county, where the county court's judgment was affirmed, and this writ of error is prosecuted to review that judgment.

In considering the matter involved here it must be borne in mind that in order for a marriage contracted in this state to be valid it must be solemnized as required by statute. In order to a valid marriage under the laws of this state there must have been performed what is ordinarily known as a ceremonial marriage, that is, the law requiring the issuance of a license and the performance of a ceremony by one authorized thereto must be complied with. *Beverlin* v. *Beverlin,* 29 W. Va. 732. Neither does the state of Virginia recognize common law marriages. *Offield* v. *Davis,* 100 Va. 250. From the statement we have made above it appears that there was no direct evidence offered to show that a ceremonial marriage had been consummated. It is not shown that any license had ever been issued authorizing the marriage of these people, nor is any witness offered who was present at any ceremony at which they were united in marriage, but it is likewise true that the evidence which was offered, while not directly proving

that such marriage was consummated, is admissible for the
purpose of showing the existence of such a marriage. Such
evidence creates a presumption that the parties have com-
plied with the law. When it is shown that a man and woman
lived together in the status of man and wife without conceal-
ment of those relations, it will be presumed that they are
married in accordance with the requirements of law, for the
reason that ordinarily people do not flaunt in the face of the
public their transgressions of the religious, moral and legal
code. *Suter* v. *Suter*, 68 W. Va. 690; *Miller* v. *Miller*, 76 W.
Va. 352; 18 R. C. L. p. 424; 26 Cyc. p. 872; 1 Wigmore on
Evidence, §268; *Philbrick* v. *Spangler*, 15 La. Ann. 46;
*Dunbarton* v. *Franklin*, 19 N. H. 257; *Hunts Appeal*, 86 Pa.
294; *Appeal of Reading Fire Ins. & Trust Company Guar-
dian*, (Pa.) 6 Atl. 60; *Cartwright* v. *McGown*, (Ill.) 12 N. E.
737. But this is only a presumption, and like most others may
be overcome by evidence showing, or tending to show, that the
facts are contrary thereto. It is argued that the failure of
the reputed widow to testify in court or to give her deposition,
although she was offered opportunity to do so, is a presump-
tion against her. She could have so easily cleared up the
whole matter. She could have told exactly where they were
married, the name of the officiating minister, and of the other
persons who were present at the ceremony, and could have
furnished facts which would have put the question beyond
dispute. Counsel opposing her right to administration
offered her the opportunity to do this, and while her counsel
declined to accept the offer, the fact that the members of the
county court present at that time were unable to agree gave
her six weeks within which to take her testimony, or to at-
tend the hearing. Notwithstanding the fact that she knew
that the members of the county court then present were di-
vided in opinion upon the question of her rights, she did not
attempt to support them in the most effective way open to
her. The testimony of her father shows that she never lived
anywhere except in Russell County, Virginia, and Bluefield,
West Virginia, nor did the deceased ever live in any other
place. Her father testifies that she told him that they were
married in Russell county, Virginia. The testimony of the

clerk of Russell county shows that no marriage license was ever issued authorizing her marriage in that county, and likewise it is shown that no such license was ever issued in Mercer county authorizing the marriage. It is contended that this failure upon her part to produce the most satisfactory evidence upon the question, evidence that was in her possession, raises a presumption against her, and of itself overcomes the presumption of marriage arising from the status shown to have existed between her and the dead man, and that when this presumption arising from her failure to testify is coupled with the evidence of the clerks of the two counties in which it is shown these two parties resided all their lives, the presumption of a marriage must fall. This was the holding of the county court. This holding was concurred in by the circuit court. As we have said before, common law marriages are not recognized in this state, and the evidence of marital habit or status was for the purpose of raising a presumption that a proper ceremonial marriage had been solemnized. This was a question of fact upon which the county court had to pass before determining her right to direct the administration of the dead man's estate. We cannot say that that court's finding is not entirely justified by the proof. The evidence introduced to support her claim undoubtedly would have been sufficient if there had been nothing in rebuttal of it. The presumption thereby raised would have led the court to the belief that there had been a marriage solemnized, but taken in connection with the evidenc offered to disprove this state of facts, and the fact that she failed to testify upon the hearing, although she had opportunity to do so, we think justified the county court in coming to the conclusion that the presumption in her favor was destroyed, and in confirming the appointment of Crockett at the instance of the father of the dead man, who was his sole distributee in case he was unmarried.

On the 8th day of July, after the court had adjourned on the first day of that month, the day administration was granted to Crockett, the reputed widow again appeared by her counsel and asked that she be allowed to further present her case. This was denied her, and she complains of this ac-

tion of the county court. The record shows that she had full and complete opportunity to present everything she desired, including her own testimony, that ample time was given her to do so, and she did not on the 8th day of July show that she desired to present anything in addition to what she had already presented, or that what she would present was in any wise material to the issue. The matter had been determined by the county court after a full and fair hearing, and it was not error for that court to refuse to re-open the matter and allow a further hearing thereof in the absence of a showing of surprise, fraud or mistake which prejudiced the party making the application. No such showing was made.

The judgment complained of will be affirmed.

*Affirmed.*