## CHARLESTON.

ZONA KESTER, *Guardian, Etc. v.* MYRTLE KESTER

(No. 6319)

Submitted January 23, 1929.  Decided January 29, 1929.

*Cornelius C. Davis* and *Homer Strosnider,* for plaintiff in error.

*Vernon E. Rankin,* for defendant in error.

LIVELY, JUDGE:

This suit, originating before a justice of the peace, involves a controversy between Zona Kester, guardian for her two children, B. Earl and C. Murrell Kester, on the one side, and Myrtle Kester, Charles B. Kester and Stella Webb (nee Stella Kester) on the other side. The two infants, B. Earl and C. Murrell Kester, are the children of Bert E. Kester, deceased, and Zona Kester is alleged to be his wife; and the other persons, Myrtle Kester, Charles B. Kester and Stella Webb, are brother and sisters of said Bert E. Kester, deceased. It appears that Bert E. Kester in his lifetime owned an interest in certain real estate which had been leased for a period of years, and for which a money rental was paid to Myrtle Kester under power of attorney to receive the same. After the death of Bert E. Kester, Myrtle continued to collect these rents and had collected about the sum of $150.00 which the infants claimed as heirs at law of their father. This rental money of $150.00 is also claimed by Myrtle and Charles B. Kester and Stella Webb, as the heirs at law of their deceased brother, Bert E. Kester. The issue is clearly drawn. The children claim to be the legitimate heirs of their father, Bert E. Kester; while on the other hand this is denied by Myrtle, Charles B. and Stella, claiming that *they* are the only heirs of their deceased brother, and that the infants are bastards and do not inherit. Are these children the heirs

at law of their deceased father? That is the crucial and controlling question in this litigation.

The brother and sisters assert and attempt to prove that Bert E., father of the children, and Zona Kester, the guardian of her children, were never legally married. On the other hand, Zona says that she had lived during her infancy and up to the time of her marriage with Bert E. (at which time she was twenty years of age) in a small village in Randolph county and had never been more than a few miles therefrom during her life. That about July 15, 1901, she and Bert ran away from home to be married, took a train which passed through Buckhannon, West Virginia, and on which they traveled until night, when they came to some town unknown to her as she could not read or write, where they registered at a hotel and immediately went to a minister to whom Bert delivered some paper; that the minister read out of the Bible and pronounced a ceremony, and declared them to be man and wife and then handed her a paper supposed to evidence the same, which was afterwards destroyed by a fire in their home. The next day they traveled back to Randolph county where they began housekeeping. She asserts that she does not know through what towns they passed on their run-away journey, nor does she know the name of the town where they were married, nor does she know the name of the alleged minister who performed the ceremony. It is quite clear from the evidence that after their return they set up housekeeping, and lived together as man and wife until his death in the year 1923. They moved to various parts of the state during their alleged married life, went to Ohio where they remained a number of years, and the last residence was near Bridgeport, Harrison county, where he died. He introduced her as his wife to his friends, lodge brothers and acquaintances, and she was accepted as such by the members of this family. She had some real estate at the time of her alleged marriage which she afterwards conveyed as Zona Kester, the wife of Bert E. Kester, who joined in that deed. Her alleged husband also in the latter part of his life executed a deed of trust on some real property owned by him in Harrison county, in which she joined as his wife for the purpose of releasing her

dower. These two children are the issue of that alleged marriage and bear their father's name; their births being recorded in the family Bible. The brother and sisters cast doubt upon this alleged run-away trip and marriage and point to the fact that she is wholly ignorant of the places and persons connected with that journey; and they showed that no marriage license was issued to them either by the county clerk of Harrison county or Randolph county, but the court refused to let them go further in the introduction of other county clerks in the vicinity to show that no marriage license had been issued for this marriage by them. Myrtle Kester, the defendant, also testified that a short time before his death, her brother, Bert, told her that he had not been legally married to Zona. The parties proceeded on the theory of a marriage performed according to our statute, and went to the jury on that evidence, the jury returning a verdict in favor of the plaintiff. The case was tried on the theory that the right of these children to inherit depended upon whether there was a legal marriage of their father and mother according to the statutes of this state. On that theory the jury found for plaintiff. But that theory is not controlling of the rights of these infants in this case. It is quite evident that even if the marriage was not according to the statutes of this state, it was a common law marriage. But it is urgently argued that common law marriages are not recognized as such in this state. That is quite true, but nevertheless it is a marriage. It is a marriage which is deemed in law as null and void and of no effect so far as the husband and wife are concerned. But the children, the issue of such marriage, are not bastards. Our statute, section 7, Chapter 78 of the Code, provides: "The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate." In the case of *Beverlin* v. *Beverlin*, 29 W. Va. 732, which holds that common law marriages, when contracted in this state, are not recognized by our courts as valid, JUDGE SNYDER, who wrote the opinion, expressly says that he came to that conclusion with less regret because by the express command of our statute, "the *issue* of marriage deemed null in law or dissolved by a court shall nevertheless

be legitimate." In that case the controversy was between husband and wife, she having sued him for a divorce and alimony. That relief was denied to her because the common law marriage shown to exist in that case was not deemed valid; the rights of the issue of that marriage were not involved, and the learned Judge says that he has come to the conclusion with less regret because the statute above quoted, made the children legitimate. By *obitur dictum* in *Lockart* v. *Hoke,* 85 W. Va. 382, 384, the *Beverlin* case in this regard was misconstrued. It seems that the common law and the laws of England and Scotland prevented all bastards from being legitimated. But in 1785 the legislature of Virginia passed the above statute thus changing the common law, the rule prevailing in England, Scotland, and under the Code Napoleon. *Ives* v. *McNicoll,* 59 Ohio St. 402, 53 N. E. 60, 43 L. R. A. 772, 69 Am. St. Rep. 780. This statute was construed in 1804 by the Supreme Court of Virginia in *Stones* v. *Keeling,* 5 Call 143, Judges Tucker and Roane both rendering opinions therein. Judge Tucker said: "The act of 1785, it should be remembered, relates to the disposition of property only; and proceeds to show who shall be admitted to share the property of a person dying intestate, notwithstanding any former legal bar to a succession thereto. And, in that light, the law ought to receive the most liberal construction; it being evidently the design of the legislature to establish the most liberal and extensive rules of succession to estates, in favor of all, in whose favor the intestate himself, had he made a will, might have been supposed to be influenced. And there can be no doubt, had he died testate, that these daughters would have been the first object of his care." Judge Roane, that eminent jurist, in construing the statute, pointed out that the marriage there involved was not lawful, and was void, but may have been innocently contracted; but had it been otherwise the legislature did not intend to visit the sins of the parents upon the innocent and unoffending offspring; that even incestuous marriage where the parties with full knowledge of the everlasting bar existing between, had produced an offspring in defiance of laws human or divine, the nullification of that marriage would not render the issue

illegitimate; that the legislature did not intend the turpitude or guilt of the marriage to break upon the head of the innocent offspring. He adverted to the first part of the act of 1785, now section 6, chapter 78 of our Code, which legitimatizes the bastard children of a man and a woman who afterwards intermarry, if those children are recognized by him. He uses that as indicative of the meaning of the statute which we are discussing. He says: ''If the legislature has legalized children begotten in open fornication, where there was no marriage or semblance of a marriage, it is a reasonable presumption that they at the same moment, and by the same clause meant also to include offspring of marriages, which, though void in law, and unfortunate, may nevertheless be excusable, and even innocent.'' *Stones* v. *Keeling, supra,* has been consistently followed by the courts of Virginia, and is binding upon this Court. In other jurisdictions where similar statutes have been passed, the rule of construction given by the Virginia court has been uniformly followed. 7 C. J. 948, section 19; *McMillan, et al.* v. *Greer,* (Cal.), 259 Pac. 995; *Henry Shipp's Estate,* (Cal.), 144 Pac. 143; *Darling* v. *Dent,* (Ark.), 100 S. W. 747; and notation to *Evatt* v. *Mier,* L. R. A. 1916-C, p. 764.

It being clear in this case that there was at least a common law marriage not recognized by our courts as valid, and deemed null in law, the statute above quoted relieves these children of their status as bastards, and makes them legitimate. Their right to recover in this case as heirs of their father is quite clear, and an instruction to find for plaintiff would have been proper. The jury has rightly decided the case, and the court has affirmed that verdict. Had the verdict been otherwise it could not stand.

Marriage at its inception is based on contract and generally such contract as to its binding force is interpreted and governed as other contracts; and where there has been a formal marriage in full accordance with our marriage statute, if the parties never intended to marry in fact and never had agreed to enter into the actual marriage relation, and never did so after the ceremony, there has been no marriage and the ceremony of marriage will be annulled. *Crouch* v. *Warten-*

*burg,* 86 W. Va. 664; same case, 91 W. Va. 91. In the instant case we have the elements of a common law marriage, carried out and performed for over twenty years. The status of a marriage existed and the issue of that marriage are legitimate under the statute of descent and distribution.

Another point of error, not mentioned in argument, but raised in the briefs, is that the court should have entertained defendant's motion to quash the summons, the ground being that plaintiff could not maintain the suit as guardian for the infant children, but that the suit should have been brought by them by next friend. It would serve no useful purpose in this case to pass upon the form of the summons, for even though it be defective, defendant has waived that defect. The circuit judge in an able opinion upheld the form of the action basing his opinion on the statute which gives to a bonded guardian the possession, care and management of his ward's estate, and citing *McDodrill* v. *Pardee & Curtin Lumber Company,* 40 W. Va. 564, and other cases. Defendant insisted that the suit should be in the name of the infants by next friend. In passing it may be observed that a next friend cannot receive payment of the judgment, he gives no bond to respond to the infants; but payment of a judgment must be made to the guardian who has given bond, or into the court. *Fletcher* v. *Parker,* 53 W. Va. 422. However, even granting that the summons was defective (but by no intendment holding that it was) the suit originated before a justice of the peace where the pleadings are always informal. Defendant appeared to that action and went to trial without making any objection to the summons or return thereof or form of action. Under our decisions as found in *Layne* v. *Ohio River Railroad Company,* 35 W. Va. 438, she has waived any objection of that character and could not interpose them in a trial on appeal in the circuit court. The fourth point of the syllabus in that case is: "A defendant who has waived all objections to the summons and return in the justice's court while appearing there and submitting to a trial, cannot, on appeal to the circuit court, take advantage of any defect in the writ or return, either by motion to quash or by a plea in abatement." In the justice's court she was fully in-

formed of the character of the case and made no objection to its form. We think the judgment against her for these rents which have accrued and which are in her hands, will protect her against any future suit for the same moneys by the infants. The motion to quash the summons in the circuit court was properly overruled.

Finding no reversible error, the judgment will be affirmed.

*Affirmed.*