HELEN PESCHO KISLA *v.* MIKE KISLA

(No. 9219)

Submitted February 10, 1942. Decided March 31, 1942.

*David S. Hearst,* for appellant.
*Aaron Lincoff,* for appellee.

LOVINS, JUDGE:

Helen Pescho Kisla instituted suit for divorce against Mike Kisla in the Circuit Court of Hancock County, on the ground of cruelty. The bill includes allegations that she was married to defendant on or about the 26th day of January, 1935, at Weirton, and that a child, now five years of age, was born to plaintiff and defendant. The defendant answered, denying that plaintiff had been married to him; that he had been cruel to her, and the paternity of the child.

Plaintiff appeals from a decree entered by the court, after a hearing, dismissing plaintiff's bill upon a finding that plaintiff and defendant were never legally and properly married in accordance with the law and statutes of this State and that the marriage was void *ab initio.* The decree also stated that the return on the marriage certificate to the State of Pennsylvania, in view of the testi-

mony, was a false return; defendant was relieved from compliance with all preliminary orders relating to payment of alimony, counsel fees and suit money then unpaid, but was required to pay the sum of $25.00 each month for the support of the child.

Prior to the 25th day of January, 1935, plaintiff was a resident of Pennsylvania, and defendant was a resident of West Virginia. On that day defendant brought plaintiff to Weirton from her residence in Burgettstown, Pennsylvania, after having procured a marriage license from the Clerk of the Orphans Court of Washington County, Pennsylvania. They went to the residence of a Greek Orthodox priest in Weirton and presented the license to him, requesting that he perform the marriage ceremony. The priest examined the license, raised the objection that it was not issued in this State and suggested that defendant obtain a West Virginia license. However, after a conversation with defendant, the clergyman agreed to and did perform the ceremony of marriage in the St. Mary's Greek Orthodox Church of Weirton. One witness testified that the priest said, before performing the ceremony, "I will marry you but you should not let that out to anybody." It does not clearly appear that plaintiff heard this statement, but her testimony shows that she knew about the objection to the Pennsylvania license and "wanted" defendant to get a license in West Virginia, "but he said it made a lot of trouble going down and making another trip." Plaintiff and defendant thereafter lived and cohabited in Weirton until March 2, 1940.

The certificate of marriage, which appears with the record, signed by the priest, states that the ceremony was performed at Burgettstown, Pennsylvania. However, the bill of complaint alleges and the testimony shows that the marriage was performed at Weirton in this State; the trial chancellor was justified, therefore, in finding that the certificate contained a false statement as to the place of marriage. The only marriage license obtained by the parties was the one, previously mentioned, issued in Pennsylvania.

This is a suit for divorce, and it would seem to be elementary that as a prerequisite to the maintenance of the suit, plaintiff must show that a valid marriage existed. Courts will not attempt a vain thing, and it follows that relief in the form of a divorce from the bonds of matrimony will not be granted in the absence of a legal status as husband and wife. *Borg* v. *Borg,* 25 Cal. App. 2d 25, 76 P. 2d 218; *Huard* v. *McTeigh,* 113 Ore. 279, 232 P. 658, 39 A. L. R. 528; *Lariviere* v. *Lariviere,* 102 Vt. 278, 147 A. 700.

Did the trial chancellor err in finding that the marriage of plaintiff and defendant was void *ab initio?* Code, 48-1-5, provides: "Every marriage in this State shall be under a license and solemnized as provided in this article." Sections 6 and 7 of the same article prescribe the procedure incident to the issuance of a marriage license and the duties of the clerk of the county court issuing the same. In the case before us no effort was made to comply with these statutory provisions relating to marriage licenses; hence, there is no question herein involving a defective license.

The problem of the legal status of persons united by a formal ceremony of marriage in this State in the absence of a license therefor, issued in compliance with our statutes relating thereto, has never been considered by this Court. In this jurisdiction a common law marriage is not recognized as a valid marriage. *Beverlin* v. *Beverlin,* 29 W. Va. 732, 3 S. E. 36; *Kester* v. *Kester,* 106 W. Va. 615, 146 S. E. 625; *Fout* v. *Hanlin,* 113 W. Va. 752, 169 S. E. 743. It has been held that our statute relating to marriage "has wholly superseded the common-law and in effect, if not in express terms, renders invalid all attempted marriages contracted in this state which have not been solemnized in substantial compliance with its provisions." *Beverlin* v. *Beverlin, supra.* This conclusion in the *Beverlin* case is based upon an interpretation of Chapter 63, Section 6, Code, 1868, (1931 Code, 48-1-5; 48-1-15), which provides that two irregularities, under certain express situations, shall not affect the validity of a marriage. These irreg-

ularities include the want of authority of the person performing the ceremony, the marriage in all other respects being lawful, and the parties so married being in full belief that they have been lawfully joined in marriage, and the celebration of marriage without a license during the years 1861-1866. It was there reasoned that all other marriages not in compliance with the statute, and not so provided for, were to be considered void. *In Re Meade's Estate,* 82 W. Va. 650, 97 S. E. 127, 129, applied this reasoning and the opinion therein contains this statement, "In order to (have) a valid marriage under the laws of this state, there must have been performed what is ordinarily known as a ceremonial marriage, that is, the law requiring the issuance of a license and the performance of a ceremony by one authorized thereto must be complied with." In the *Meade* case there was neither a marriage license nor evidence of the performance of a marriage ceremony. The opinion in *Fout* v. *Hanlin, supra,* discussing common law marriages, states that the reasons for recognizing such marriages no longer exist, and by way of *obiter,* that now it is required "that the institution of marriage be circumscribed and safeguarded by a license of the state and a formal ceremony." See *Offield* v. *Davis,* 100 Va. 250, 40 S. E. 910, involving a like factual situation and a statute almost identical with ours. It will be noted that the *Beverlin* case refers to "substantial" compliance with the statutory provisions and the *Meade* case states that the statute "must be complied with". Whether the latter and later decision indicates that more than substantial compliance should be required, we are not called upon to determine in this case, since, as hereinbefore pointed out, there was no effort to comply with the statutes relating to marriage licenses.

We hold that the statute is mandatory in its requirement that "every marriage in this state shall be made under a license * * * as provided in this article", and where, as in this case, a formal ceremony of marriage is performed in this state without a license therefor issued under the provisions of Code, 48-1, the parties thereto do

not attain the legal status of husband and wife, the attempted marriage being void.

Although on this appeal only the validity of the marriage is questioned, we deem it proper to make the observation that the issue of common law marriages and marriages deemed null in law shall be legitimate. Code 42-1-7. *Beverlin* v. *Beverlin, supra; Fout* v. *Hanlin, supra.* The child of the plaintiff and defendant is, therefore, legitimate.

In accordance with the principles herein stated we affirm the decree of the trial court.

*Affirmed.*