Mary Jane Reed PACE and o/b/o Jeanette, James, and Umanuel Pace, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education and Welfare, Defendant.

Civ. A. No. 860.

United States District Court
S. D. West Virginia,
Bluefield Division.

July 21, 1965.

I. Mann Litz, Welch, W. Va., for plaintiff.

George D. Beter, Acting U. S. Atty., Charleston, W. Va., for defendant.

CHRISTIE, District Judge:

This is an action under Section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare. The final decision of the Secretary in this case is a decision rendered by the Appeals Council on May 22, 1964, denying plaintiff's application for widow's insurance benefits and her children's claim for child insurance benefits under Section 202(g) of the Act, 42 U.S.C.A. § 402(g), and § 202(d) of the Act, 42 U.S.C.A. § 402(d), respectively.

The relevant facts in this case are undisputed and are as follows:

Huin Pace, deceased wage earner whose earnings record plaintiff and children are relying upon for recovery, ceremonially married Hassie Rumney in Henry, Virginia, on November 27, 1919. They separated six or seven years later. In 1936, deceased wage earner began living with the plaintiff, Mary Jane Reed, in Eckman, West Virginia, while he was still married to Hassie Rumney Pace.[1] This alleged common-law relationship continued to exist until November 12, 1961, when wage earner died. Four children were born out of this alleged common-law relationship, of which the three minor children are presently applying for benefits.

On February 5, 1962, plaintiff filed an application for widow's benefits and for child's insurance benefits on behalf of her children.[2] On February 23, 1962, she was notified that her claim for widow's insurance benefits had been denied because she had never been legally married to the wage earner under West Virginia law; also that the children's claim had been disallowed since they were not the children of wage earner under West Virginia law. Upon reconsideration by the Administration at plaintiff's request, these decisions were affirmed. Again on plaintiff's request, a hearing was held on August 20, 1963, at Welch, West Virginia. The hearing examiner, in his decision on October 24, 1963, affirmed the denial of widow's benefits to plaintiff, but held that the three minor children were entitled to child's insurance benefits. The Appeals Council then reviewed the hearing examiner's decision on its own motion, and in its decision on May 22, 1964, affirmed the denial of widow's benefits to plaintiff, but reversed the examiner's decision insofar as the children were concerned and held that they were not

---

1. A court record from Montgomery County, Ohio, revealed that Hassie Rumney Pace divorced wage earner on September 23, 1961.

2. In June of 1959, wage earner, having established a period of disability in 1958, and his wife filed for wife's and child's insurance benefits, but their claims were denied. No appeals were taken on those applications.

entitled to benefits as they were not the legitimate issues of the deceased wage earner.

Plaintiff now seeks judicial review of that decision in this court. The facts not being in dispute, we are only called upon to decide the legal conclusions to be drawn from the facts.

Concerning plaintiff's entitlement to widow's or mother's insurance benefits under the Act, Section 202(g), 42 U.S.C.A. § 402(g) provides in pertinent part as follows:

"(g) (1) The widow * * * of an individual who died a fully or currently insured individual, if such widow * * *—

    (A) has not remarried,

    *   *   *   *   *

    (D) has filed application for mother's insurance benefits, * * *

    (E) at the time of filing such application has in her care a child of such individual entitled to a child's insurance benefit, and

    *   *   *   *   *

shall be entitled to a mother's insurance benefit for each month, beginning with the first month after August 1950 in which she becomes so entitled to such insurance benefits and ending with the month preceding the first month in which any of the following occurs: * * *."

Section 216(h) (1) (A), 42 U.S.C.A. § 416(h) prescribes the required family status of one seeking benefits under the above-quoted code section, and the relevant portions are as follows:

"(h) (1) (A) An applicant is the wife, husband, widow, or widower of a fully or currently insured individual for purposes of this subchapter if the courts of the State in which such insured individual is domiciled at the time such applicant files an application, or, if such insured individual is dead, the courts of the State in which he was domiciled at the time

of death, or, if such insured individual is or was not so domiciled in any State, the courts of the District of Columbia, would find that such applicant and such insured individual were validly married at the time such applicant files such application or, if such insured individual is dead, at the time he died."

The pertinent West Virginia law, 48–1–5 of the Code, states,

"Every marriage in this State shall be under a license solemnized as provided in this article."

■■■ The Secretary, in applying this statute to the present case, found that plaintiff was not validly married within the statutory requirements and thus did not acquire the status of wage earner's widow so as to entitle her to benefits. We must agree with that interpretation. Plaintiff, in her "Statement of Marital Relationship" on February 5, 1962, explained that she did not have a ceremonial marriage because her husband was legally married to another woman. She, however, bases her entitlement to widow's benefits on a common-law relationship. The West Virginia Supreme Court, though, in Kisla v. Kisla, 124 W.Va. 220, 19 S.E.2d 609 (1942), held that a common-law marriage in this jurisdiction is not recognized as a valid marriage, citing Beverlin v. Beverlin, 29 W.Va. 732, 3 S.E. 36 (1887); Kester v. Kester, 106 W.Va. 615, 146 S.E. 625 (1929); Fout v. Hanlin, 113 W.Va. 752, 169 S.E. 743 (1933). In order to have a valid marriage under West Virginia law there must be ceremonial marriage as prescribed by law, requiring the issuance of a license and the performance of a ceremony by one authorized to perform such. In re Meade's Estate, 82 W.Va. 650, 97 S.E. 127 (1918).

Believing, therefore, that the State of West Virginia would not recognize plaintiff's marriage as valid, our inquiry need go no further, as plaintiff has quite clearly failed to meet one of the required prerequisites of the Act. It, furthermore, being quite clear that plaintiff nev-

er attempted or went through any type or form of marriage ceremony, the provisions of 42 U.S.C.A. § 416(h) (1) (B) are inapplicable.

Turning now to the children's claim for benefits under Section 202(d) of the Act, 42 U.S.C.A. § 402(d), the provisions of 216(h) (2) (A), 42 U.S.C.A. § 416 (h) are all-important. This section provides,

> "In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property * * * if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, * * *."

Thus, the primary issue for consideration is whether, under West Virginia law, these children of an invalid marriage would inherit as children from the wage earner.

In West Virginia, illegitimate children can only inherit from their mother. W.Va.Code, Ch. 42, art. 1, sec. 5 (Michie 1961). The Code, however, recognizes two methods by which children begotten of an invalid marriage can be legitimatized so as to inherit from their father. They are,

(1) "Sec. 4085 (6) Legitimation by Marriage—

> "If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, shall be deemed legitimate." W.Va.Code, Ch. 42, art. 1, sec. 6 (Michie 1961).

(2) "Sec. 4086 (7) Issue Legitimate Though Marriage Null—

> "The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate." W.Va.Code, Ch. 42, art. 1, sec. 7 (Michie 1961).

Regarding Section 4085, plaintiff and wage earner, living together unlawfully and having four children by such relationship, never attempted to go through a ceremonial marriage according to the West Virginia statute, thus clearly excluding any possibility of the children obtaining legitimacy under this section. If the children are to qualify as the legitimate issues of wage earner, they then must come under Section 4086 of the Code.

The statute [3] refers specifically to "marriages deemed null in law." The West Virginia cases have repeatedly held that a common-law marriage, while being invalid, is recognized as a marriage within the meaning of the statute. Fout v. Hanlin, supra; Kester v. Kester, supra; Luther v. Luther, 119 W.Va. 619, 195 S.E. 594 (1938). But did the relationship between plaintiff and wage earner constitute a common-law marriage relationship? The statute being humanitarian, it must be liberally construed. Pickens v. O'Hara, 120 W.Va. 751, 200 S.E. 746 (1938); Luther v. Luther, supra. As stated, though, in the Luther case, "No matter how liberal the construction, however, there must be a relationship which under the law is matrimonial before the law could deem it null and the statute would operate." To be considered a common-law marriage the following elements must exist:

(1) Lawful capacity to contract a marriage, and

(2) Matrimonial intent, bona fides or good faith on the side of at least one of the parties.

Because of wage earner's existing marriage which continued until a little over a month prior to his death, he lacked both elements. Because plaintiff was aware of this legal impediment and knew that they could not be lawfully married, she lacked the element of good faith.

The only remaining question then is whether, after the removal of the legal impediment, i. e., the divorce by

3. Section 4086 of the Code.

Hassie Rumney Pace from wage earner in September of 1961, there was sufficient evidence of record to establish a common-law marital relationship. It is a well settled rule of law that cohabitation illicit in its origin is presumed to continue so unless the contrary is proved. Beverlin v. Beverlin, supra; Hall v. Baylous, 109 W.Va. 1, 153 S.E. 293, 69 A.L.R. 527 (1930). Thus, evidence of a change in the relations between the parties is necessary, since the mere continuance of cohabitation will not raise a presumption of marriage. Hall v. Baylous, supra. Here, the record is completely barren of proof of any change in the relations between plaintiff and wage earner after the divorce. In fact, the evidence is to the contrary. Of particular significance is the plaintiff's designation of her relationship to the wage earner as "Mary Jane Reed, friend" on her application for lump-sum death benefits to cover wage earner's burial expenses. This unequivocally, we think, shows that plaintiff did not think of her relationship with wage earner as one of husband and wife, thus plainly revealing her lack of matrimonial intent. Of further significance is plaintiff's own statement that the wage earner, upon learning of his divorce, had nothing to say about his and plaintiff's future relationship.

Therefore, believing that plaintiff's relationship with wage earner was illicit at the beginning and the record failing to reveal any convincing evidence of a change in their relationship after September of 1961, signifying an intent to convert their hitherto illicit status into a more conventional one, we must hold no marriage—ceremonial, common law or otherwise—ever existed between these parties and, consequently, their children were and could not be the "issue of a marriage," such as is contemplated by Section 4086(7), supra, entitling them to the benign benevolence of that statute.

So viewed, this court is of the opinion that the Secretary correctly interpreted and applied the law to the facts involved and that his decision denying plaintiff widow's or mother's benefits and denying

child's insurance benefits to the children must be upheld. Thus, defendant's motion for summary judgment is hereby granted and plaintiff's complaint dismissed.

Summary Judgment Awarded Defendant; Plaintiff's Complaint Dismissed.