STATE OF WEST VIRGINIA

*v.*

DEWEY BRAGG

(No. 12730)

Submitted September 17, 1968.    Decided October 15, 1968.

*Ernest V. Morton, Jr.,* for plaintiff in error.

*C. Donald Robertson,* Attorney General, *Leo Catsonis,* Assistant Attorney General, for defendant in error.

CALHOUN, JUDGE:

Dewey Bragg, who may be referred to hereafter in this opinion as the defendant, has appealed to this Court from a final judgment entered on June 1, 1967, by the Circuit Court of Webster County upon a jury verdict finding him guilty in a trial on an indictment charging him with the nonsupport of Goldie Gene Bragg and James Burton Bragg, who are described in the indictment as "his children * * * being under the age of eighteen years and in destitute and necessitous circumstances, * * *."

Dewey Bragg, the defendant, was never married to the mother of the two children. He was tried and convicted on the theory that the two children were born as a consequence of a common-law marriage of their parents and that, therefore, the children are the legitimate children of the defendant by reason of Code, 1931, 42-1-7, which is as follows: "The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate."

The questions presented to this Court for decision are questions of law arising upon a stipulation of facts which were proved at the trial as follows:

"In lieu of a transcript of evidence in this case, the State of West Virginia by William W. Talbott her prosecuting attorney and the defendant by Ernest V. Morton, Jr., his attorney, stipulate that the following pertinent facts were proved on the trial of this case:

"1. Edith Rose and defendant Dewey Bragg began cohabitation in 1949, and lived together in West Virginia as man and wife until December 1964, she using the name of Edith Bragg.

"2. Of this union were born two children, Goldie Gene Bragg in 1950 and James Burton Bragg in 1952. Defendant is father of said children.

"3. Edith Rose and defendant were never married to each other in a formal and legal marriage ceremony prescribed by statute.

"4. In September 1965 Edith Rose caused defendant to be indicted in the usual form for failure to support the said Goldie 'Gene Bragg and James Burton Bragg 'his children', on December 10, 1964.

"5. Under proper instructions of the Court the jury by its verdict found that said children were defendant's legitimate children under the provisions of Code 47-1-7, as being the issue of what would have been a common law marriage, in a jurisdiction recognizing the same.

"6. Defendant first raised the issue that Code 47-1-7 applied only to civil proceedings and not to criminal, by motion made at the conclusion of state's evidence, which motion was overruled at the trial.

> "WILLIAM W. TALBOTT,
> Prosecuting Attorney.
> ERNEST V. MORTON, JR."

The essentials of a common-law marriage are stated in *Pickens* v. *O'Hara,* 120 W. Va. 751, pt. 3 syl., 200 S. E. 746; *Luther* v. *Luther,* 119 W. Va. 619, 195 S. E. 594. The fifth paragraph of the stipulation states that, "Under proper instructions of the Court the jury by its verdict found that the children were the defendant's legitimate children under provisions of Code 47-1-7, as being the issue of what would have been a common law marriage in a jurisdiction

recognizing the same." In the light of the stipulation, we must accept as a fact that the essentials of a common-law marriage were established at the trial. Even in the absence of a stipulation, we would be required to accept the jury's finding of the existence of a common-law marriage, inasmuch as the testimony on that issue is not before the Court. *Pozzie* v. *Prather,* 151 W. Va. 880, 157 S. E. 2d 625.

Code, 1931, 48-8-1, as amended, the nonsupport statute under which the defendant was indicted and convicted, provides that a parent may be prosecuted for the nonsupport "of his or her legitimate or illegitimate child or children, * * *." In a prosecution of a father for nonsupport of his illegitimate child, the nonsupport statute is considered in pari materia with Code, 1931, 48-7-1, the paternity or bastardy statute, which provides that a proceeding thereunder must be instituted before the child becomes three years of age; and, therefore, a prosecution of a father under the nonsupport statute for nonsupport of his illegitimate child can not be maintained after the child becomes three years of age or older, unless paternity has been judicially determined or admitted before the child attained the age of three years. *Holmes* v. *Clegg,* 131 W. Va. 449, 453, 48 S. E. 2d 438, 441; *State* v. *Mills,* 121 W. Va. 205, 2 S. E. 2d 278; *State* v. *Hoult,* 113 W. Va. 587, 169 S. E. 241. The two children involved in this case were older than three years of age when the nonsupport indictment was returned on September 5, 1965, and, therefore, it was essential at the trial of this case to establish that the children were the legitimate children of the defendant.

A common-law marriage is not recognized as a valid marriage in this state. Code, 1931, 48-1-5; *Kisla* v. *Kisla,* 124 W. Va. 220, 222, 19 S. E. 2d 609, 610; *Beverlin* v. *Beverlin,* 29 W. Va. 732, pt. 1 syl., 3 S. E. 36; *Pace* v. *Celebrezze,* 243 F. Supp. 317, 319. Such marriages are recognized as valid in many jurisdictions, though such rule has been changed by statute in some jurisdictions which previously recognized common-law marriages as valid. 55 C.J.S., Marriage, Section 6, p. 816; Annot., 133 A.L.R. 758. The courts of

this state will recognize as valid and will accord legal effect to a common-law marriage created or consummated in another state if common-law marriages are recognized as valid in that state. *Jackson* v. *State Compensation Comm'r.*, 106 W. Va. 374, 145 S. E. 753; *Miller* v. *Miller*, 76 W. Va. 352, 85 S. E. 542.

In *Kester* v. *Kester*, 106 W. Va. 615, 618, 146 S. E. 625, 626, the Court stated: "But it is urgently argued that common law marriages are not recognized as such in this state. That is quite true, but nevertheless it is a marriage. It is a marriage which is deemed in law as null and void and of no effect so far as the husband and wife are concerned. But the children, the issue of such marriage, are not bastards. Our statute, * * *, provides: 'The issue of marriages deemed null in law, or dissolved by a court, shall nevertheless be legitimate.' " The holding of the *Kester* case was adhered to in *Fout* v. *Hanlin*, 113 W. Va. 752, 169 S. E. 743, wherein the Court stated (113 W. Va. 752, 756, 169 S. E. 743, 744): "The legitimating statute, founded in benevolence and charity, has for its design the protection of innocent offspring. Humanitarian principles require that the statute be liberally construed to effectuate its benign purpose." To the same effect, see *McClaugherty* v. *McClaugherty*, 180 Va. 51, 21 S. E. 2d 761.

In *Luther* v. *Luther*, 119 W. Va. 619, 621, 195 S. E. 594, 595, the Court stated: "Code, 42-1-7, is one of our statutory inheritances from Virginia. It was prepared by a committee consisting of those outstanding lawyers and statesmen, Edmund Pendleton, George Wythe, and Thomas Jefferson. It was new law, marking a radical departure from the common and statute law of England on the subject. It was first enacted in 1785. It has been adopted, usually verbatim, in many of the states, and with it, 'the most liberal construction' recommended by an early Virginia court (1804) in *Stones* v. *Keeling*, 5 Call 143, *et seq.*" The fifth point of the syllabus of *Pickens* v. *O'Hara*, 120 W. Va. 751, 200 S. E. 746, is as follows: "Code, 42-1-7, providing that 'the issue of marriages deemed null in law, or dissolved by

a court, shall nevertheless be legitimate,' being a humanitarian statute, should be liberally construed so as to embrace a common-law marriage contracted in this state; but such construction does not dispense with the proof of such marriage or take from the persons asserting it the burden of such proof."

Immediately preceding the statute here in question is a similar statute, Code, 1931, 42-1-6, which is as follows: "If a man, having had a child or children by a woman, shall afterwards intermarry with her, such child or children, or their descendants, shall be deemed legitimate." In considering this statute in *Farley* v. *Farley,* 136 W. Va. 598, 606, 68 S. E. 2d 353, 359, the Court stated that "every presumption should be indulged in favor of legitimacy." In considering two Virginia statutes almost identical in language with the two statutes of this state which have been quoted previously herein, the Supreme Court of Appeals of Virginia stated in *Goodman* v. *Goodman,* 150 Va. 42, 45, 142 S. E. 412, 413: "These statutes are remedial in their nature, and should be liberally construed."

In the light of the authorities previously cited, we are of the opinion that Code, 1931, 42-1-7, should be liberally applied in favor of the children involved in this case in order to effectuate the obviously benign and benevolent purpose of the statute to relieve children in such circumstances of the stigma of illegitimacy, as well as to ameliorate in a great measure the harsh legal burdens which otherwise attach to children of illegitimate birth. The general rule throughout the country is that statutes of this character are accorded a broad and comprehensive application.

> "While the effect of the legitimation of a bastard depends largely upon the terms of the statute by virtue of which the legitimation takes place, generally speaking legitimation equalizes children born out of wedlock with legitimate children. Some statutes provide that on the fulfilment of the enumerated requirements, the bastard becomes, for all purposes, legitimate from the time of its birth, but even in the absence of any provision to that effect they are construed to put the child on a par with

children born in lawful wedlock. All the recipro-
cal responsibilities and duties of the parent-child
relationship obtain between a father and his legiti-
mated child. * * *." 10 Am. Jur. 2d, Bastards,
Section 57, p. 886.

"Usually legitimation changes the status, or, as
sometimes stated, the status and capacity, of an ille-
gitimate child to the status of a child born in law-
ful wedlock; in other words the civil and social
status of such child becomes that of a lawful child
of the natural father. Thus, in the absence of a pro-
vision to the contrary, the legitimated child and the
father stand in their relations to each other as
though the child had been born during wedlock,
and a legitimated child comes within the provisions
of laws relating to legitimate children, and has all
the rights of a lawful child or a child born in law-
ful wedlock. * * *." 10 C.J.S., Bastards, Section
14, pp. 71-72.

Counsel for the defendant, by brief and oral argument,
assert that Code, 1931, 42-1-7, which provides that the issue
of marriages deemed null in law, or dissolved by a court,
"shall nevertheless be legitimate" is ambiguous. It is as-
serted that the ambiguity arises in part from a determina-
tion of the "general scope" of the statute. We are unable
to perceive the force of that contention. If the language
of a statute is clear and unqualified, we are of the opinion
that its "general scope" should be determined by the clear,
unqualified language contained therein. The other basis
for the contention that the statute is ambiguous is that it
is contained in Article 4 of Chapter 42 of the Code, which
article is headed "Descent." If the statute were unclear
or ambiguous, we would be called upon to construe the
statute and in that event it might be proper and helpful to
consider the position of the statute in the Code in an effort
to determine its meaning and the scope or breadth of its
operation. But even in such circumstances we would find
it logical to note that the following section of the same chap-
ter of the Code is headed "Distribution"; and certainly it
would be illogical and unrealistic to assume that Code, 1931,
42-1-7, was designed by the legislature to confer upon chil-

dren born of a void marriage a right to receive real estate from the father by the laws of descent but not personal property by the laws of distribution.

We are of the opinion that the provisions of Code, 1931, 42-1-7, are clear and unambiguous. The language of the statute has remained unchanged since the earliest days of our state's existence. It was not altered or qualified as a consequence of the careful scrutiny and prolonged study of our state statutes which culminated in the adoption of the revised, official Code of 1931. We are not at liberty, therefore, to read into the statute any limitations or qualifications not in any sense expressed in its language or to assume that the legislature intended the statute to have any meaning other than that which is clearly expressed therein. *State ex rel. Riffle* v. *City of Clarksburg,* W. Va., pt. 3 syl., 152 W. Va. 317, 162 S. E. 2d 181.

For reasons stated herein, the judgment of the Circuit Court of Webster County entered in this case on June 1, 1967, is affirmed.

*Affirmed.*