ETTA MEADE, *Widow, Etc.*

*v.*

STATE COMPENSATION COMMISSIONER, *et al.*

(No. 12153)

Submitted April 17, 1962.          Decided May 29, 1962.

W. V. McNemar, Jr., for appellant.

R. L. Theibert, for appellees.

CALHOUN, PRESIDENT:

This case involves an appeal from a decision and order of the Workmen's Compensation Appeal Board dated November 10, 1961, which affirmed an order of the Workmen's Compensation Commissioner dated June 12, 1961, by which Etta Meade, the claimant, was awarded benefits as a dependent widow and Elmer Douglas Smith, her son, was awarded benefits as a dependent stepchild of the deceased workman, Albert Meade. The primary question presented involves the contention of the employer, Island Creek Coal Company, that Albert Meade had a wife by a prior marriage, living and undivorced, at the time of his marriage to Etta Meade, the claimant, at Inez, Martin County, Kentucky, on July 3, 1952.

Albert Meade was fatally injured on October 30, 1959, in the course of and as a result of his employment by Island Creek Coal Company in West Virginia. Though employed in West Virginia, Albert Meade lived with Etta Meade as husband and wife continuously in Martin County, Kentucky, from the time of their marriage on July 3, 1952, until his death on October 30, 1959. Elmer Douglas Smith, a son born out of wedlock to Etta Meade prior to her marriage to Albert Meade, lived in the Meade household, and was supported by Albert Meade. He was born November 6, 1943, and has been in the United States Army since February 14, 1960. He is not denied the status of a "stepchild" of Albert Meade merely because of the fact that he was born out of wedlock. *Simpson v. State Compensation Commissioner*, 114 W. Va. 814, pt. 1 syl., 174 S. E. 329.

The employer made a timely protest to the commissioner's order, which held the claim to be compensable, and, at the

hearing subsequently held, undertook to establish that the marriage of Albert Meade to Etta Meade was void under an applicable statute of the State of Kentucky because his prior marriage to another woman then remained in full force and effect.

The position which the claimant took before the Workmen's Compensation Appeal Board and the position taken by her before this Court is twofold: (1) The validity or invalidity of a marriage alleged to be bigamous can be determined only by a court of record; and (2) in any event, the proof is insufficient to rebut the presumption of the validity of the marriage which is alleged by the employer to be bigamous. The Workmen's Compensation Appeal Board, as disclosed by its opinion, held that the commissioner had the authority to declare that the marriage was void by operation of the law of Kentucky if the proof were sufficient to establish that Albert Meade "had a living wife" at the time of the marriage in question; but held, nevertheless, that the proof was insufficient to overcome the presumption of the validity of such marriage.

From the record there can be no question of the fact that Albert Meade was married to Carrie Catherine DePriest in Bath County, Virginia, on October 2, 1941. This appears by properly authenticated copies of the marriage license and the marriage certificate. A copy of Albert Meade's discharge from the United States Army, dated November 29, 1945, discloses that his home address at that time was Hot Springs, Virginia, and that he was then married. The record includes the deposition of Virginia D. Cleek, Clerk of the Circuit Court of Bath County, Virginia, in whose office the marriage license, marriage certificate and army discharge are recorded. In addition to her testimony in relation to such matters, she testified that Albert Meade instituted a divorce suit against Carrie Catherine DePriest Meade on May 8, 1946, but that such suit was not matured for hearing and no divorce decree was entered therein. Duncan M. Byrd, an attorney at law residing in Bath County, Virginia, stated that, while in the armed services in World War II, Albert Meade employed him to institute a suit for divorce

against his wife, Carrie Catherine DePriest Meade; that such suit was instituted, but that Albert Meade did not return to prosecute such divorce suit to a conclusion. Attorney Byrd testified further that Etta Meade called him by telephone from Inez, Kentucky, to make inquiry concerning such divorce suit; and that within a few days thereafter she appeared at his office in person, at which time and place he explained to her that no divorce decree was ever entered in the suit which he had instituted in behalf of Albert Meade. Etta Meade admitted in her testimony that she went from Inez, Kentucky, to Hot Springs, Virginia, to inquire of Attorney Byrd in relation to the divorce suit, but she testified that she did not get any satisfactory information in relation thereto, except that there was no official record of such a divorce.

Etta Meade testified that Albert Meade, during his lifetime, resided in Mingo County, West Virginia; in Bath County, Virginia; and in Martin County, Kentucky; and that she had no knowledge or information of his ever having resided at any other place. The employer produced depositions of the court clerk having official custody of divorce records in each of the three counties named above to prove that Albert Meade had not been divorced in any of such counties in which he had resided.

The employer submitted depositions of James Thompson, Rosa Thompson, and Isom Spaulding, respectively, all of whom now live in Bath County, Virginia, but were natives of Mingo County, West Virginia, as was Albert Meade. Apparently, these three deponents were reared with Albert Meade in Mingo County, and were closely associated with him when he lived in Bath County. Each of the three testified that Albert Meade married Carrie Catherine DePriest in Bath County. James Thompson and Isom Spaulding testified that Albert Meade had stated to them that he commenced a suit for divorce from Carrie Catherine DePriest Meade, but that such suit was never prosecuted to a final conclusion.

An application for a social security number made by Albert Meade on September 10, 1947, represented that he

was then married to "Carrie DePriest." The deposition of Carrie Catherine Criss was taken at Bel Air, Maryland, near her present place of residence in that state. She testified that she is the same person as Carrie Catherine DePriest who married Albert Meade, as stated earlier herein; that she consulted an attorney "a couple of times", apparently in Maryland, relative to a proposed divorce from Albert Meade, but that no divorce suit was instituted in her behalf; that she never at any time obtained a divorce from Albert Meade, never received any sort of notice of any suit for divorce instituted by him, and that she had no knowledge or information of any divorce obtained from her by Albert Meade. She testified that a son born of her marriage to Albert Meade was nineteen years of age at the time she testified on April 7, 1961.

In her application for workmen's compensation, Etta Meade stated that she had been married and divorced before her marriage to Albert Meade, but that he had never been married previously.

The claimant offered no evidence whatsoever to rebut the proof submitted in behalf of the employer for the purpose of establishing that Albert Meade, at the time of his marriage to the claimant, had a wife by a prior marriage living and undivorced.

In support of the contention that the commissioner had no jurisdiction or authority to question the validity of the marriage of Etta Meade to Albert Meade, her counsel relies on the case of Sledd v. State Compensation Commissioner, 111 W. Va. 509, 163 S. E. 12. The question presented therein was whether the widow of the deceased workman should be denied compensation because she had a husband by a prior marriage at the time of her marriage to the deceased workman. The Court in its opinion pointed out that at common law a bigamous marriage was "absolutely void ab initio, and it was good for no legal purpose." See also 55 C.J.S., Marriage, Section 17, page 831. The opinion proceeds to discuss the distinction between marriages which are absolutely void and those which are merely voidable, and observes that our statute has "radically changed" the common law by pro-

viding: " * * * all marriages which are prohibited by law on account of either of the parties having a former wife or husband then living, * * * shall be void from the time they are so declared by a decree of nullity." Code, 1931, 48-2-1, as amended. Code, 48-2-6, provides that jurisdiction to affirm or annul marriages and to grant divorces shall be in the circuit courts. Accordingly, the Court held in the *Sledd* case that a bigamous marriage may be declared to be void, but that "such attack must be made in a court of competent jurisdiction and not before an administrative officer of the state government."

On the other hand, the employer relies on three prior decisions by this Court construing the provisions of Code, 1931, 48-2-22, as amended. That statute provides that, in case of a divorce, neither party to the marriage shall remarry within a specified period of time from the date of the divorce decree, unless they remarry each other; and that a marriage in violation of that restriction "shall be void, and the party shall be criminally liable the same as if no divorce had been granted." In holding a marriage in violation of that restriction to be absolutely void and not merely voidable, in the case of *Hall* v. *Baylous,* 109 W. Va. 1, 3, 153 S. E. 293, 294, the Court stated: "Whether a marriage of the kind under consideration should be treated as entirely void, or should be open to attack only in specific proceedings brought by certain persons, is purely a question of policy for the Legislature." In the case of *McManus* v. *State Compensation Commissioner,* 113 W. Va. 566, 169 S. E. 172, in denying compensation to the widow of the deceased workman whom she had married in violation of the statutory restriction referred to above, the Court held that such marriage was "void *ab initio.*" In the case of *Cole* v. *State Compensation Commissioner,* 121 W. Va. 111, 1 S. E. 2d 877, the widow of a deceased workman was denied compensation because their marriage was in violation of the statutory restriction on remarriage following divorce. The Court reconsidered the two prior decisions referred to herein immediately above, refused to qualify or depart from them, and, accordingly, treated the marriage as absolutely void. See also 58 W. Va. Law Rev. 128. These three prior decisions of this Court

are authority for the proposition that, if the marriage is void, rather than merely voidable, the compensation commissioner has the jurisdiction, authority and duty to deny compensation to the woman who entered into such void marriage with the deceased workman in his lifetime. See also *Shamblin* v. *State Compensation Commissioner,* 122 W. Va. 652, 12 S. E. 2d 527. The Workmen's Compensation Appeal Board was correct, therefore, in its view that the commissioner had the right and duty in the instant case to deny compensation to Etta Meade if the proof had been sufficient to establish that Albert Meade had a wife living at the time of his marriage to the claimant. It becomes necessary, therefore, to determine whether the proof, tested by applicable legal principles, is sufficient to rebut the legal presumption of the validity of the second marriage.

The burden of proving the fact of marriage is upon the one who asserts that fact. *Oxley* v. *Sweetland* (W. Va.), 94 F. 2d 33; 55 C.J.S., Marriage, Section 43, page 887. Once the fact of a marriage is established there arises a legal presumption of its validity. *Spradlin* v. *State Compensation Commissioner,* 145 W. Va. 202, 113 S. E. 2d 832, 835; *Allen* v. *Allen,* 126 W. Va. 415, pt. 1 syl., 28 S. E. 2d 829; *Pickens* v. *O'Hara,* 120 W. Va. 751, 765, 200 S. E. 746, 753; 55 C.J.S., Marriage, Section 43c, page 890. Code, 48-2-2, relating to suits for affirmation or annulment of marriages, concludes as follows: "In every such case, and in every other case where the validity of a marriage is called in question, it shall be presumed that the marriage is valid, unless the contrary be clearly proven, * * *."

The presumption of the validity of the second marriage comes in conflict with a presumption, which applies to the first marriage, to the effect that when a valid marriage is shown to have existed, there arises a presumption of its continuance and of the continuance of the life of the prior spouse. While the presumption of validity of the second marriage has not received universal approval, the "generally accepted view is that a second marriage will be presumed to be valid and that such presumption is stronger than and overcomes the presumption of the continuance of the prior

marriage and the presumption of continuance of life of the prior spouse, inasmuch as it is presumed in favor of the second marriage that the prior marriage was terminated by death or divorce." Anno. 14 A.L.R. 2d 10. The rule in relation to such conflicting presumptions is stated in 55 C.J.S., Marriage, Section 43 (3), page 893, as follows: "In case of conflicting marriages of the same spouse, the presumption of validity operates in favor of the second marriage, and the party attacking the second marriage has the burden of proving its invalidity and of showing a valid prior marriage; and where a valid prior marriage is shown it is presumed to have been dissolved by divorce or death so that the attacking party has the burden of adducing evidence to the contrary."

From the authorities heretofore cited and others which will be cited subsequently herein, it appears that, in favor of the second marriage, it is presumed that the prior marriage was dissolved by death or by divorce prior to the date of the second marriage. The proof shows beyond all question that the wife in the first marriage was living at the time the second marriage occurred. To that extent, therefore, the presumption in favor of the second marriage loses its force; and it remains effective only to the extent of a possibility that the prior marriage was dissolved by divorce.

Notwithstanding the presumptions referred to previously herein, the burden is upon the claimant in workmen's compensation proceedings to prove his claim. *Williams* v. *State Compensation Commissioner,* 127 W. Va. 78, 84, 31 S. E. 2d 546, 549; 21 M. J., Workmen's Compensation, Section 66, page 103; 100 C.J.S., Workmen's Compensation, Section 516, page 472. No presumption of the type referred to herein will relieve the claimant of that overall burden. Jones on Evidence (5th Ed.), Volume 1, Section 118, page 204. "A rule based on a presumption of fact becomes impotent whenever the presumption is seasonably rebutted. A presumption is rebutted when facts to the contrary are established." *Dwight* v. *Hazelett,* 107 W. Va. 192, pt. 10 syl., 147 S. E. 877. "A rebuttable presumption is not evidence of a fact but is purely a conclusion which has no probative force and is designed only to sustain the burden of proof until evidence

is introduced which explains or overcomes it." *Mulroy* v. *Co-Operative Transit Company,* 142 W. Va. 165, pt. 3 syl., 95 S. E. 2d 63. See *Brace* v. *Salem Cold Storage, Inc.,* 146 W. Va. 180, pt. 4 syl., 118 S. E. 2d 799; *Prettyman* v. *Hopkins Motor Co.,* 139 W. Va. 711, pt. 1 syl., 81 S. E. 2d 78.

In relation to the conflicting presumptions and the burden of proof in situations such as that herein involved, the following is stated in 55 C.J.S., Marriage, Section 43c, page 897: "Where there is some evidence in rebuttal the burden of showing the invalidity of the first marriage or its termination by divorce shifts to the party asserting such invalidity or termination." See also 38 C. J., Marriage, Section 97, page 1321. In many jurisdictions it has been held that the presumption of the dissolution of the prior marriage by divorce is rebutted by proof that no such divorce was obtained in the jurisdictions in which the parties to the prior marriage lived from the time of the occurrence of such marriage until the date of the second marriage. Anno. 14 A.L.R. 2d, Section 22, page 54. See also 55 C.J.S., Marriage, Section 45d, page 915. In the third point of the syllabus of the case of *In the Matter of Meade's Estate,* 82 W. Va. 650, 97 S. E. 127, it is stated that if a man and woman live together ostensibly as husband and wife, "a presumption arises that a legal marriage had been theretofore solemnized between them." The fourth point of the syllabus is as follows: "In such case, where the man dies, and the reputed widow's right to administer upon his estate is questioned, and it is shown that no license was ever issued authorizing the marriage of the parties in any of the counties in which they had lived, and such reputed widow fails to testify upon the question of her marriage, although offered an opportunity to do so, the presumption arising from such marital habit or reputation is sufficiently rebutted to warrant the county court's refusal to appoint such reputed widow, or one named by her, to administer upon such estate."

Sustaining generally the principles herein stated in relation to presumptions and burden of proof in case of a marriage alleged to be bigamous, see annotations in 14 A.L.R. 2d 7, 77 A.L.R. 729, and 34 A.L.R. 464; 35 Am. Jur.,

Marriage, Sections 191-199, pages 303-311; 55 C.J.S., Section 43, pages 887-898; 38 C. J., Marriage, Sections 97-104, pages 1321-1330; 12 M. J., Marriage, Section 9, page 404; *Parker* v. *American Lumber Corporation,* 190 Va. 181, 56 S. E. 2d 214, 14 A.L.R. 2d 1.

We believe that the proof in this case is sufficient to rebut the presumption that the former marriage of Albert Meade was dissolved prior to the date of his marriage to Etta Meade, and that the contrary finding of the Workmen's Compensation Appeal Board is erroneous. The Workmen's Compensation Appeal Board obviously placed much reliance on the case of *Parker* v. *American Lumber Corporation,* 190 Va. 181, 56 S. E. 2d 214. The following critical analysis of that case appears in Larson, Workmen's Compensation Law, Volume 2, Section 62.21, page 92: "In *Parker* v. *American Lumber Corporation,* the evidence rebutting the presumption consisted of proof of deceased's first marriage, plus the uncontradicted testimony of his first wife that she had never divorced him nor received any notice of a divorce obtained by him. The court said that this was not enough to overcome the presumption of validity of the second marriage. One wonders what else could be expected, within the range of practical possibilities. The other party to the first marriage is dead. The required burden is that of proving a negative—that is, it would require the searching of the files of all the jurisdictions in which a legal divorce might have been obtained. Actually, in this case, the first wife's denial of divorce was weakened by her subsequent conduct, which included a remarriage some years later."

The recent case of *Spradlin* v. *State Compensation Commissioner,* 145 W. Va. 202, 113 S. E. 2d 832, involved a factual situation similar to that in the instant case. The claimant was the widow of the deceased workman and their marriage had been solemnized in Kentucky. It was asserted that the deceased workman had a living wife at the time of his marriage to the claimant, and that the latter marriage was therefore void under the laws of Kentucky. This Court held that the evidence was wholly insufficient to prove a prior marriage. The opinion in the *Spradlin* case contains

the following language which is believed to be pertinent to the decision of the instant case: "The rule that a marriage which is void in the jurisdiction in which it is contracted or celebrated is void everywhere is equally well established and is likewise supported by the weight of authority." In other words, as a general rule, the validity of a marriage must be tested by the laws of the jurisdiction in which it is contracted or celebrated. 55 C.J.S., Marriage, Section 4b, page 811. For instance, in the case of *Johnson* v. *Sands,* 276 Ky. 492, 124 S. W. 2d 774, it was held that a marriage celebrated in West Virginia, when its validity is questioned in a court in Kentucky, must be determined in accordance with the laws of West Virginia. The marriage was held to be merely voidable under Code, 1931, 48-2-1, as amended, though it would have been void under Kentucky statutory law. While common law marriages are not valid in West Virginia, this court, in a workmen's compensation case, recognized such marriage because it was lawful and valid in the state in which it was celebrated. *Jackson* v. *State Compensation Commissioner,* 106 W. Va. 374, 145 S. E. 753, 62 A.L.R. 170.

Paragraph 3, Section 402.020, Kentucky Revised Statutes, July 1, 1960, is, in part, as follows: "Marriage is prohibited and *void:* * * * (3) where there is a husband or wife living, from whom the person marrying has not been divorced; * * *." (Italics supplied.)

For the reasons stated herein, the Court holds that the evidence fails to disclose a valid marriage of Etta Meade, the claimant, to the deceased workman, Albert Meade, and that the order of the Workmen's Compensation Appeal Board must be reversed.

The decision of the board in this case, we believe, is not based so much on a finding of fact as upon the application of legal principles to pertinent facts which are largely, if not wholly, undisputed. In any event, the decision of the board is not supported by the evidence, and is plainly wrong. *Flynn* v. *State Comp. Comr.,* 141 W. Va. 445, pt. 2 syl., 91 S. E. 2d 156; *Morris* v. *St. Comp. Comr.,* 135 W. Va. 425, 430, 64 S. E. 2d 496, 499; *Walk* v. *St. Comp. Comr.,* 134 W. Va.

223, pt. 2 syl., 58 S. E. 2d 791; *Miller* v. *State Comp. Comr.*, 130 W. Va. 771, 776, 45 S. E. 2d 249, 251; *Estep* v. *St. Comp. Comr.*, 130 W. Va. 504, syl., 44 S. E. 2d 305; *Rasmus* v. *Workmen's Comp. App. Bd.*, 117 W. Va. 55, pt. 2 syl., 184 S. E. 250; *Wills* v. *St. Comp. Comr.*, 114 W. Va. 822, pt. 2 syl., 174 S. E. 323.

For the reasons stated herein, the order of the State Compensation Commissioner and the order of the Workmen's Compensation Appeal Board are reversed, and the case is remanded to the State Compensation Commissioner.

Judge Given participated in the unanimous decision of this case by the Court, but his death occurred before this opinion was prepared, approved and announced.

*Reversed and remanded.*