FRANCES CASTON TAYLOR,
*Widow of Brooklyn D. Taylor, Deceased*

*v.*

JAY DOUGLAS TAYLOR,
*As Executor of the Estate of*
*Brooklyn D. Taylor, Deceased;*

JAY DOUGLAS TAYLOR;

JEAN AVALEE POTTS;

MARGARET KATHRYN HULLEY;

DALTON TANNER TAYLOR;

MALBA CLAXTON LAFON;

KATHRYN JEAN COURTRIGHT;

VIRGINIA MAE FRASHER; *and*

JAMES DOUGLAS DICK

(No. 13693)

Decided December 1, 1976

Rehearing Denied March 14, 1977.

*Henry C. Bias, Jr. and E. Leslie Hoffman, III* for appellant.

*John G. Anderson* for appellees.

WILSON, JUSTICE:

On this appeal, we are required to determine whether the plaintiff (appellant) demonstrated a valid marriage between herself and Brooklyn D. Taylor, now deceased. The Circuit Court of Putnam County, after a trial without a jury, found that she had not. We affirm.

Brooklyn D. Taylor, a resident of Hurricane, West Virginia, died on March 30, 1974, leaving a will dated March 19, 1974, in which the plaintiff was not named as a beneficiary. Plaintiff instituted this action for an assignment of dower claiming that she was the surviving widow of Brooklyn D. Taylor by virtue of her marriage to him on July 28, 1972, at the Bixler United Methodist Church in Westminster, Maryland.

In our consideration of this case, the substantive law of Maryland, the alleged place of marriage, will govern the determination of the validity of the marriage. *See,* Syllabus No. 4, *Meade v. State Compensation Comm'r.,* 147 W. Va. 72, 125 S.E.2d 771 (1962). Adjective matters are, of course, governed by the law of West Virginia.

The plaintiff, being the one who asserts the fact of marriage, has the burden of proof. *See, Meade v. State Compensation Comm'r., supra,* 147 W. Va. at 78, in which this Court cites with approval *Oxley v. Sweetland,* 94 F.2d 33 (4th Cir. 1938).

In discharge of her burden of proof, plaintiff first relies upon the application for a marriage license and the certificate of marriage, both of which were introduced as exhibits. It is the plaintiff's contention that these documents are *prima facie* evidence of the marriage upon which she relies. *See,* Article 62, Section 13, Annot. Code of Maryland.

In this case, however, the application does not correctly show decedent's name, age, or residence address and does not show, without question, his correct occupation. The certificate of marriage is likewise defective in those particulars and is further defective because of startling contradictions regarding the signature of the alleged presiding minister, a niece of decedent and a minister of the Church of Holy Light.

Under such circumstances, plaintiff's *prima facie* case is so riddled with uncertainties and inconsistencies that it cannot be said that there is sufficient *prima facie* evidence of marriage to justify a finding of the fact of marriage.

Plaintiff apparently recognized that she had failed to make an adequate *prima facie* case and endeavored to show the fact of marriage by other means.

For example, she sought to establish the marriage by general reputation. The trial court specifically found that the general reputation of Brooklyn D. Taylor was that he was not known to be a married man. We will not disturb that finding which was based upon the trial judge's evaluation of the evidence presented on that issue.

The plaintiff also endeavored to show that a marriage ceremony was in fact performed. On the theory that such a formal ceremony was shown by the evidence, she

claims the benefits of the presumptions of the competency of the parties, the authority of the person officiating and the regularity and the validity of the proceedings. *See, Schaffer v. Richardson's Estate*, 125 Md. 88, 93 A. 391 (1915); and *Bowman v. Little*, 101 Md. 273, 61 A. 223 (1905).

The trial court did not specifically find that a marriage ceremony had taken place. Under the trial court's view of the case, perhaps it was not necessary for it to make such a finding. Our own review persuades us that the evidence offered by the plaintiff to prove that a ceremony in fact took place is so incredible that it precludes a finding that a marriage ceremony was held at the time and place alleged by the plaintiff.

The plaintiff testified that there was such a ceremony and offered the testimony of other witnesses in support thereof. However, consistency ends with the recitation that there was a ceremony. The time of the ceremony, the precise place at which it was conducted within the church, the presence or absence of people presumably attending a funeral in the same church at the same time, the means by which Brooklyn D. Taylor got from his home in Hurricane to Gettysburg, Pennsylvania, where he was to meet his bride-to-be, the circumstances and details surrounding the trip to and from the church, the failure of anyone to obtain, or even to try to obtain, the approval of the pastor or other official of the Bixler United Methodist Church for the holding of a marriage ceremony in the church, and the incidents which occurred following the alleged ceremony are all so vaguely and variously described as to amount to innovation rather than recollection. The crowning uncertainty is introduced by Reverend Demetrius S. Leatherman, who, by affidavit, first denied conducting the ceremony and then subsequently apparently recalled conducting the ceremony.

We are not required to believe testimony, even though uncontradicted, if it is opposed to common knowledge or human experience, inherently improbable, unreasonable

or unworthy of belief. *See, Lusher v. Sparks*, 146 W. Va. 795, 122 S.E.2d 609 (1962). *See also, Raines v. Faulkner*, 131 W. Va. 10, 48 S.E.2d 393 (1947); and *Owen v. Appalachian Power Co.*, 78 W. Va. 596, 86 S.E. 262 (1916).

However, if we assumed for the sake of argument that there was in fact a ceremony, the law of Maryland would construe it as creating a valid marriage if the parties in good faith intended to be married. *See, Knapp v. Knapp*, 149 Md. 263, 131 A. 329 (1925). There is nothing in this record indicating to us any such good faith intention on the part of either the plaintiff or the decedent. Indeed, a fair reading of all the evidence can only support the proposition that neither the plaintiff nor the decedent manifested in any clear and unmistakably way that a marital state existed between them.

The deficiencies to which we have already referred are made more troublesome by the disclosure of other facts and circumstances. For example, subsequent to the time of the alleged marriage, plaintiff was shown as the person who prepared at least three deeds in which the decedent as the grantor was designated as "unmarried;" decedent's acknowledgements showed him as "unmarried;" and the plaintiff, as the one who prepared the deeds, is shown not by her alleged married name of "Taylor" but as Dr. Frances Caston "Leatherman." Likewise, after the alleged ceremony, there were other deeds and accompanying acknowledgements in which the decedent was described as "unmarried." Further, it was demonstrated that the decedent, in having his income tax forms prepared for the Year 1972, designated himself as "single." In addition, it was established that the plaintiff notarized at least one document in Pennsylvania in November, 1973, as Frances "Leatherman" without designation of her change of name to "Taylor." Finally, at least as late as December 29, 1973, plaintiff was shown to have maintained her automobile driver's license in the name of Frances McVey "Leatherman."

The state of marriage entails a vast accumulation of reciprocal and substantial personal and property rights,

duties and responsibilities. A claim of marriage will not be lightly regarded. Likewise, it should not be frivolously presented.

For the reasons expressed in this opinion, we affirm the judgment of the Circuit Court of Putnam County.

*Affirmed.*