# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**LINDA MURPHY, DEPENDENT OF HAROLD R. MURPHY (DECEASED),**
**Claimant Below, Petitioner**

**v.) No. 23-ICA-447**   (JCN: 2020023988)

**ST. GOBAIN CERAMICS & PLASTICS, INC.,**
**Employer Below, Respondent**

**and**

**WEST VIRGINIA OFFICES OF THE INSURANCE COMMISSIONER IN ITS CAPACITY AS ADMINISTRATOR OF THE OLD FUND,**
**Respondent**

**FILED**

**June 5, 2024**

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner, Linda Murphy, widow of Harold Murphy, appeals from the September 11, 2023, Order of the Workers' Compensation Board of Review ("Board"), which affirmed the Claim Administrator's May 20, 2021, decision denying dependents' benefits. Respondent, the West Virginia Offices of the Insurance Commissioner acting in its capacity as administrator of the Old Fund, timely filed a response.[1] Respondent St. Gobain Ceramics & Plastics, Inc. did not participate on appeal. Petitioner did not file a reply. The issues raised on appeal relate to a ruling that Mrs. Murphy was not entitled to dependents' benefits because her husband's death was not caused or contributed to in any material degree by occupational exposure to asbestos.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' oral and written arguments, the record on

---

[1] Linda Murphy is represented by John H. Skaggs, Esq. The West Virginia Offices of the Insurance Commissioner is represented by Karin L. Weingart, Esq.

[2] Petitioner's brief declares at page two that the issue on appeal is whether Mr. Murphy's "fibrosis was caused or contributed to in any material degree by his exposure to asbestos and silica" but neither the brief nor the petitioner during oral argument developed the argument that silica was a contributing factor to Mr. Murphy's death. Consequently, we do not address this potential issue on appeal.

1

appeal, and the applicable law, this Court finds that there is no error in the decision, and no substantial question of law. Therefore, this case satisfies the "limited circumstances" requirement of Rule 21(c) of the Rules of Appellate Procedure. For the reasons stated below, the order is affirmed.

Petitioner's husband, the late Harold Murphy, was employed in various capacities at a refractory brick plant in Buckhannon, West Virginia, from 1968 until July 31, 1998. Over the years, this facility was owned and operated by various entities, including West Virginia Glass, Corhart Refractories, Corning Glass, and eventually St. Gobain Ceramics & Plastics, Inc. It manufactured two lines of products, asbestos clad refractory brick and silica based "glass blocks." Asbestos was last used at the brick plant in the early 1980s. Mr. Murphy completed a Complaint Summary Form alleging that he had been exposed to insulation, asbestos board, chrome oxide, glass dust, zircon, black chrome dust, magnesium, graphite, and silica while working at the plant.

Mr. Murphy died on January 5, 2020. According to his death certificate, he died from "respiratory failure," with "chronic obstructive pulmonary disease" and "occupational lung disease" as secondary causes. His autopsy report dated March 3, 2020, indicated findings of biventricular heart failure and severe chronic hypoxic respiratory failure with severe honeycombing in all lung lobes. Further, there was evidence of interstitial lung disease with patchy anthracosis and silicosis (suggesting possible exposure to silicates and dust as a contributing factor for the interstitial lung disease) and evidence of pulmonary hypertension. The autopsy revealed a pleural plaque,[3] but no definitive ferruginous bodies or asbestos fibers were identified microscopically. No evidence of mesothelioma or any other malignancy was found.

On March 1, 2020, Linda Murphy, the decedent's wife, completed an application for Fatal Dependents' Benefits. Her claim was afforded the non-medical presumption set forth under West Virginia Code § 23-4-8c(b) (2009).[4] On March 18, 2021, however, the

---

[3] Fibrous plaque was also found in the pericardium. According to the autopsy report, pleural and pericardial plaques, "although non-specific, have been associated with asbestos exposure."

[4] West Virginia Code 23-4-8c(b) provides:

> If it can be shown that the claimant or deceased employee has been exposed to the hazard of inhaling minute particles of dust in the course of and resulting from his or her employment for a period of ten years during the fifteen years immediately preceding the date of his or her last exposure to such hazard and that the claimant or deceased employee has sustained a chronic respiratory disability, it shall be presumed that the

Occupational Pneumoconiosis Board ("OP Board") issued a report finding that occupational pneumoconiosis was not a material contributing factor in the decedent's death based on a review of the decedent's medical records. The OP Board's radiologist reviewed diagnostic imaging and reported:

> Honeycombing noted diffusely right lung with less severe changes in the left lung, more remarkable left lower lobe. No parenchymal nodules identified. No pleural plaque formation or pleural calcifications noted.... Honeycombing is a non-specific finding, in the absence of pleural plaques, this is most likely idiopathic pulmonary fibrosis, differential remains broad for the end stage pulmonary findings, however. Again, no radiographic findings to suggest coal workers' pneumoconiosis or pleural plaques which [] would [be] expect[ed] to be present, present if the pulmonary findings represented asbestosis.

By order dated May 20, 2021, the claim administrator denied dependents' benefits based upon the finding of the OP Board that occupational pneumoconiosis did not cause or materially contribute to Mr. Murphy's death. Mrs. Murphy appealed the order to the Board.

Petitioner's expert, Ronald E. Gordon, Ph.D., reviewed the decedent's medical records and drafted a report dated April 1, 2022. Dr. Gordon is a Professor and Director of Electron Microscopy in the Department of Pathology at the Mt. Sinai School of Medicine and Director of the Analytic Asbestos Analysis Laboratory at the Mt. Sinai Health System. Dr. Gordon found the presence of chrysotile and amphibole type asbestos fibers in the lung tissue in concentrations of 2,509 fibers per gram wet weight. All but one of these fibers were attributed to amphibole type asbestos fibers. Dr. Gordon opined that the decedent had a mixed occupational asbestos exposure documented by the fiber burden of chrysotile and amphibole asbestos fibers (crocidolite, amosite, and tremolite). Dr. Gordon further opined, based on his "finding of significant amounts of commercial asbestos at occupational levels and types of asbestos fiber burden," that the asbestos was a causal factor for the decedent's severe asbestosis with honeycombing and pleural plaques, and that this severe asbestosis caused the decedent's right heart to enlarge and develop right heart failure.[5] He also noted

---

claimant is suffering or the deceased employee was suffering at the time of his or her death from occupational pneumoconiosis which arose out of and in the course of his or her employment. This presumption is not conclusive.

[5] Although Dr. Gordon referred to "occupational levels" of commercial asbestos, he did not identify any studies establishing occupational levels for commercial asbestos.

that "silica particles were evident in an amount that demonstrates occupational exposure to silica."

On December 27, 2022, following his review of the decedent's medical records and his own examination of lung tissue, the respondent's expert, Robert H. Swedarsky, M.D., issued a report. Dr. Swedarsky also reviewed Dr. Gordon's report and found that it did not meet the 2010 guidelines established by the Asbestos Committee of the College of American Pathologists and the Pulmonary Pathology Society for the histological diagnosis of asbestosis.[6] These criteria require an acceptable pattern of alveolar fibrosis coupled with at least 2 asbestos bodies per square centimeter of lung tissue. When no or few asbestos bodies are present, asbestos fiber burdens may be considered as a marker of asbestos exposure if they are sufficiently numerous. Pleural plaques may also provide evidence of asbestos exposure, especially if they are numerous, bilateral, and calcified.

According to Dr. Swedarsky, his examination of Mr. Murphy's lung tissue found non-specific honeycombing and no asbestos bodies. Thus, the commonly accepted criteria for a histologic diagnosis of asbestosis were not met, thereby limiting the value of Dr. Gordon's report. As for the 2,509 asbestos fibers per gram found by Dr. Gordon, Dr. Swedarsky opined that this fiber burden was much lower than he would expect to find in someone with asbestosis. [7] Therefore, these fibers most likely represented non-industrial ambient exposure and did not support a diagnosis of occupational disease. Dr. Swedarsky noted that the decedent's comorbid conditions, including reflux disease with aspiration, pulmonary emboli, congestive heart failure, episodes of pneumonia, and gout could contribute to honeycomb lung. Dr. Swedarsky observed that Dr. Gordon's report did "not include background population control ranges, the laboratory's control ranges for known asbestosis cases, [and that] dried to wet ratios [were] not reported." Dr. Swedarsky further opined that deposits of black pigment and birefringent particles in Mr. Murphy's lung tissue were consistent with exposure to silica but insufficient to diagnose mixed dust pneumoconiosis.

On February 2, 2023, Dr. Gordon authored an affidavit reviewing the report of Dr. Swedarsky. Dr. Gordon stated that the presence of crocidolite and amosite fibers, and the level of fibers other than chrysotile, indicated that the decedent had occupational exposure

---

[6] Victor L. Roggli, et al., *Pathology of Asbestosis—An Update of the Diagnostic Criteria: Report of the Asbestosis Committee of the College of American Pathologists and Pulmonary Pathology Society*,134(3) Arch. Pathol. & Lab. Med. 462-80 (March 2010).

[7] Dr. Swedarsky stated that he would expect fiber levels of at least one million fibers per gram dry weight. He did not indicate what this would convert to in terms of wet weight, but Dr. Kinder stated that this would be roughly 100,000 thousand fibers per gram wet weight.

to commercial fibers. Dr. Gordon indicated that his own analysis was consistent with and complied with the commonly accepted principles of fiber burden analysis. Further, Dr. Gordon described the half-life of various types of asbestos fibers and stated that over time, the fibers may be digested by lung tissue, leaving behind damage to the lung. According to Dr. Gordon, "[b]ased on the history of Mr. Murphy he may very well have had exposure of millions of fibers that are no longer present in his lungs."

Dr. Gordon was critical of the studies Dr. Sewardsky cited concerning fiber burdens associated with asbestosis, largely because many of them allegedly did not involve populations where asbestos exposure had ended many years before testing and analysis.[8] He also opined that the studies Dr. Swedarsky referred to had not been properly controlled "for confounding factors of non-occupational or uncharacterized exposures." [9] It was Dr. Gordon's opinion that Dr. Swedarsky failed to account for the half-life of chrysotile fibers found in Mr. Murphy's lung tissue. Additionally, Dr. Gordon opined that Dr. Swedarsky ignored the fact that the dose of particles necessary to cause a fibrotic response varies from one patient to another. Dr. Gordon posited that the types of asbestos fibers found in Mr. Murphy's lung tissue established that there was occupational exposure, which was not acquired from the general environment, and that the fibers were of the type well known to damage lung tissue, resulting in fibrosis. According to Dr. Gordon, "crocidolite and amosite are purely occupational or industrial exposures and not ambient."

Three members of the OP Board testified at a hearing on June 28, 2023. Johnsey Leef, Jr., M.D., a radiologist for the OP Board, testified that he reviewed several CT scans, the most recent being dated December 28, 2019. This CT revealed a diffuse fibrotic process throughout the decedent's lungs with honeycombing. Dr. Leef testified that the fibrosis pattern was indicative of idiopathic pulmonary fibrosis and that he saw no evidence of pleural plaques or calcified pleural plaques to suggest any kind of asbestos exposure. Dr. Leef opined that the fibrosis that he observed on the CT scan did not have the classic pathognomonic pattern for asbestos.

---

[8] According to Dr. Gordon, "[t]he studies cited by Dr. Swedarsky have numerous issues which prevent them from being reliable in reviewing this case. These include the relatively short time between the last exposure and analysis in many of the studies, different exposure histories in the study cases and Mr. Murphy, and changes in techniques over the years."

[9] Dr. Gordon stated in his affidavit that his background studies had been "published a number of times," and that they had controlled for confounding factors, but he did not cite these studies, indicate when, where, or by whom they had been published, or whether they had been peer reviewed. He also did not state what background levels they had reported.

Jack Kinder, M.D., the chairman of the OP Board, testified that the decedent had a history of occupational exposure to dust at a glass company from February 1969 to January 1985, when Corhart took over the factory and dust exposure decreased. Dr. Kinder noted that in May 2008, the decedent developed breathing problems and underwent a CT scan, at which time he was found to have fibrosis in both lungs. Dr. Kinder also noted that in February 2012, the decedent was found to have an old pulmonary embolus and a nodule. Dr. Kinder noted that Dr. Swedarsky did not feel there was enough occupational exposure for the decedent to have asbestosis and agreed that the decedent's pulmonary fibrosis was likely not related to occupational exposure. [10]

Dr. Kinder agreed with Dr. Leef that the decedent's CT scans showed no signs of occupational exposure, and he was, therefore, unable to make a connection between the decedent's pulmonary fibrosis and his occupational exposure. Dr. Kinder testified extensively about Dr. Gordon's methodology and the interplay of the half-life of the fibers versus the number of fibers that remained in Mr. Murphy's lung tissue. Dr. Kinder recognized that it would be desirable to have studies showing current background levels for asbestos fibers, and studies relating asbestosis to fiber burdens in populations where exposure had ended many years ago, but he was unaware of any such studies, and the OPB had to make its decision based on currently available data. Ultimately, Dr. Kinder remained of the opinion that Mr. Murphy's lung fibrosis was not connected to his occupational exposure. Thus, Dr. Kinder testified that he did not believe that the decedent's occupational exposure materially contributed to his death. Dr. Kinder opined that the decedent suffered from idiopathic pulmonary fibrosis, which was not caused by his occupational exposure. A third member of the OP Board, Dr. Mallinath Kayi, concurred with the opinions and conclusions of Dr. Kinder.

On September 11, 2023, the Board affirmed the claim administrator's order denying Mrs. Murphy's application for dependents' benefits, holding that the OP Board's finding that occupational pneumoconiosis did not play a material contributing role in the decedent's death was not clearly wrong. Mrs. Murphy now appeals the Board's order.[11]

The standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the
> Workers' Compensation Board of Review or remand the case for further

---

[10] Dr. Kinder agreed that Mr. Murphy's fiber burden of amphibole asbestos resulted from an occupational exposure to commercial asbestos but did not agree that this exposure had materially contributed to Mr. Murphy's lung disease.

[11] Rule 19 oral argument was held on May 21, 2024.

proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;

(2) In excess of the statutory authority or jurisdiction of the Board of Review;

(3) Made upon unlawful procedures;

(4) Affected by other error of law;

(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

This Court may not reverse the Board merely because it might have ruled differently. *See Ramaco Resources, Inc. v. Rollins*, No. 19-1163, 2021 WL 5216712, at \*8 (W. Va. Nov. 9, 2021) (Hutchison, J., dissenting) (citing *Bd. of Educ. of Cty. of Mercer v. Wirt*, 192 W. Va. 568, 578-79, 453 S.E.2d 402, 412-13 (1994); *see also Keaton v. W.Va. Off. of Ins. Comm'r,* No. 22-0060, 2023 WL 5978291, at \*3 (W. Va. Sept. 14, 2023) (memorandum decision) ("This Court may not reweigh the evidentiary record, but must give deference to the findings, reasoning, and conclusions of the Board of Review…"). As we observed in *Kirkbride v. Ball Metal Food Container Corp.*, No. 23-ICA-146, 2023 WL 6290504, at \*3 (W. Va. Ct. App. Sept. 26, 2023) (memorandum decision), "[o]ur review is deferential to the Board."

On appeal, Petitioner alleges three errors by the Board. According to her, it erred when: (a) it found that she had not met her burden of proof to show that her husband had died from occupational disease when she offered proof of her husband's exposure to asbestos and silica dust, and an expert opinion establishing a link between such exposure and his death; (b) when it adopted the findings of the OP Board despite the Board relying on out of date studies, and was unable to offer a definitive diagnosis of what had caused her late husband's extensive lung fibrosis; and (c) when it failed to properly apply the holding of *Powell v. State Workmen's Compensation Comm'r*, 166 W. Va. 327, 273 S.E.2d 832 (1980) that a claimant is not required to prove that the conditions of a worker's employment were the sole or exclusive cause of his injury or death. We will address each of these arguments in turn.

Regarding the first assignment of error, although the claimant was entitled to a rebuttable non-medical presumption that her husband suffered from occupational pneumoconiosis, the Board found that the employer successfully rebutted that presumption. Upon reviewing the record on appeal, we are unable to say that this ruling was clearly wrong, arbitrary, capricious or characterized by an abuse of discretion.

7

Notwithstanding whatever rebuttable presumptions may apply, "the burden is upon the claimant in workmen's compensation proceedings to prove his claim," and no presumption "will relieve the claimant of that overall burden." *Meade v. State Comp. Comm'r*, 147 W. Va. 72, 79, 125 S.E.2d 771, 776 (1962).

> A rule based on a presumption of fact becomes impotent whenever the presumption is seasonably rebutted. A presumption is rebutted when facts to the contrary are established. …A rebuttable presumption is not evidence of a fact but is purely a conclusion which has no probative force and is designed only to sustain the burden of proof until evidence is introduced which explains or overcomes it.

*Id.*[12] In the case at bar, there was credible expert testimony that Mr. Murphy did not have occupational pneumoconiosis, and that evidence was sufficient to overcome the statutory presumption if accepted by the OP Board. Moreover, the OP Board and Board were not clearly wrong when it came to weighing conflicting evidence concerning whether Mr. Murphy suffered from occupational pneumoconiosis.

Petitioner argues that the statutory presumption is controlling and requires a finding that the claimant is entitled to compensation whenever the OP Board is unable to make a definitive diagnosis of what caused a lung injury or death. In reality, the presumption is only controlling when it cannot be determined whether occupational exposure did or did not cause a lung disease or death.

Regarding the second assignment of error, claimant argues that the Board erred in adopting the findings of the OP Board because the employer's expert relied on out-of-date studies, and the Board was unable to make a definitive diagnosis of what caused her late

---

[12] In construing a similar statutory presumption concerning occupational pneumoconiosis, our sister state of Kentucky has instructed that:

> The legislature has labeled the presumptions "rebuttable." It is therefore clear that the legislature intended the general rules applicable to rebuttable presumptions to apply. Such presumptions may only be indulged in so long as there is no substantial evidence to the contrary. Once substantial evidence to the contrary is offered, the presumptions disappear, and any factual issues in dispute must be determined based on the evidence adduced.

*Wells v. Hamilton*, 645 S.W.2d 353, 355 (Ky. 1983).

husband's lung fibrosis. Although the claimant attacked the studies relied on by the employer, she did not identify any other studies that were more reliable or up to date. The challenges to the employer's studies went to their weight, and it was up to the OP Board and the Board to determine the weight of the evidence.

The Board agreed with the OP Board that Mr. Murphy's fibrosis had a non-occupational cause, idiopathic pulmonary fibrosis. It is true that the OP Board and the Board were unable to make a definitive diagnosis of what caused the decedent's lung disease, but the OP Board was able to exclude occupational pneumoconiosis as a material cause of death using commonly accepted criteria for diagnosing asbestosis.[13] This was sufficient to rule out occupational pneumoconiosis caused by asbestos exposure. We note in this regard that West Virginia Code § 23-4-8c(c) requires the OP Board to determine "[w]hether or not the claimant or the deceased employee has contracted occupational pneumoconiosis;" it does not require the OPB to definitively determine what actually caused the claimant's or deceased employee's injury or death if it was **not** caused by occupational pneumoconiosis.  On several occasions, the Supreme Court of Appeals of West Virginia has upheld the Board when it denied dependents' benefits for occupational pneumoconiosis based on a diagnosis of idiopathic pulmonary fibrosis. *See, e.g., Harper v. W. Va. Off. Of Ins. Comm'r*, No. 14-0470, 2015 WL 6181334 (W. Va. Oct. 14, 2015) (memorandum decision); *Buckley v. Donaldson Mine Co.*, No. 12-1101, 2014 WL 1316664 (W. Va. April 2, 2014) (memorandum decision); *Woodall v. W. Va. Off. of Ins. Comm'r*, No. 11-0894, 2013 WL 1003491 (W. Va. March 14, 2013) (memorandum decision).

The Board's ruling in this case was consistent with the findings by the OP Board, the testimony of the OP Board members, and the report of the employer's expert. Great deference is given to findings by the OP Board because of its special expertise in pulmonary disease, including pneumoconiosis, and its presumptively impartial nature. *See Fenton Art Glass Co. v. W. Va. Office of Ins. Comm'r*, 222 W. Va. 420, 431, 664 S.E.2d 761, 772 (2008); *Fridley v. Alpha Natural Resources*, No. 17-0064, 2017 WL 4512420, at *2 (W. Va. Oct. 10, 2017) (memorandum decision); and *Hodge v. W. Va. Office of Ins. Comm'r*, No. 13-0850, 2014 WL 6802371, at * 2 (Dec. 2, 2014) (memorandum decision).

Turning to the third assignment of error, contrary to Petitioner's argument, the Board did not require the claimant to prove that occupational exposure to dust was the **only** cause of Mr. Murphy's death. Instead, it denied the claim because it found that such exposure was not **any** material cause of his death.

Accordingly, we affirm the September 11, 2023, Order of the Board.

---

[13] The claimant has not questioned whether appropriate diagnostic criteria were applied in this matter.

Affirmed.

**ISSUED:** June 5, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear