IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**LORRAINE CLARK, Dependent of
CLIFTON CLARK, SR., (Deceased),
Claimant Below, Petitioner**

**FILED
April 29, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 24-ICA-429**       (JCN: 2024005297)

**U.S. STEEL MINING COMPANY, INC.,
Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Lorraine Clark, dependent of Clifton Clark, Sr., (deceased), appeals the September 23, 2024, order of the Workers' Compensation Board of Review ("Board"). Respondent U.S. Steel Mining Company, Inc., ("US Steel") filed a response.[1] Ms. Clark filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which rejected the claim for fatal dependents' benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Clark had two occupational hearing loss claims, JCN: 880019890 and JCN: 970009394. Mr. Clark was granted a total of 3.66% permanent partial disability awards for hearing loss from those claims. On April 14, 2023, Mr. Clark died, and his death certificate, dated April 16, 2023, listed the immediate cause of death as abdominal sepsis with the underlying causes of volvulus and advanced dementia. Peter Recupero, D.O., signed the death certificate.

Prior to his death, Mr. Clark was seen by Cheryl Rhodes, Au.D., and William Larsen, Au.D. from July 6, 2020, through March 24, 2023. On July 6, 2020, Audiologist Larsen reported that Mr. Clark complained of a decrease in hearing acuity over the past several years and constant tinnitus. On September 8, 2021, Mr. Clark complained of a decrease in hearing acuity. Testing showed a mild to moderately severe, sensorineural hearing loss. Ms. Rhodes stated there appeared to be an insignificant change in hearing acuity compared to Mr. Clark's July 6, 2020, audiogram. On September 15, 2022, Mr.

---

[1] Ms. Clark is not represented. US Steel is represented by Sean Harter, Esq.

Clark complained of a decrease in his hearing acuity and reported bilateral tinnitus. Testing revealed an insignificant change in his hearing acuity compared to his last audiogram.

Mr. Clark was evaluated by Laura Flashman, Ph.D., who is Board Certified in clinical neuropsychology, on September 7, 2021. Dr. Flashman found that Mr. Clark met the criteria for later stage mild neurocognitive disorder and opined that he could be in the early stage of a major neurocognitive disorder. Dr. Flashman suggested updated hearing and eye examinations, as these factors appeared to be impacting his cognitive and daily functioning. Dr. Flashman noted that Mr. Clark's hearing was significantly impaired even with the use of hearing aids, and it was unclear whether the difficulty was solely due to hearing impairment or partly due to comprehension problems.

Mr. Clark was seen by Benjamin Williams, M.D., and Jennifer Wood, PA-C, several times from 2021 through 2023. The records indicate that Mr. Clark underwent back surgery in February of 2021 and his memory had been much worse since then. Dr. Williams performed a neurological examination and found that Mr. Clark met the criteria for having a mild dementing illness. An MRI of Mr. Clark's brain was performed on February 6, 2022, revealing no acute intracranial abnormality; diffuse cerebral volume loss without lobar predilection superimposed on findings of chronic small vessel ischemic disease; and relatively symmetric bilateral hippocampal atrophy. On February 7, 2022, Dr. Williams advised Mr. Clark that the diagnostic testing showed diffuse brain shrinkage, which could be an indicator of a neurodegenerative disease process.

On March 14, 2022, Dr. Williams reported that additional testing did not support the presence of dementia with Lewy bodies or any of the other nerve degeneration diseases that involve symptoms similar to Parkinson's disease. Dr. Williams indicated that there was a neurodegenerative process affecting Mr. Clark's brain. On December 14, 2022, it was noted that Mr. Clark did not talk as much as he previously had and that he was having hearing difficulties. On March 6, 2023, it was reported that Mr. Clark was suffering from hallucinations and sleep difficulties.

Muhammad Haroon Burhanullah, M.D., a neuropsychiatrist, saw Mr. Clark on March 14, 2023. Dr. Burhanullah noted that Mr. Clark was disinterested in answering questions and due to profound hearing loss, Dr. Burhanullah was not sure if Mr. Clark was able to hear properly. Dr. Burhanullah concluded that Mr. Clark had Alzheimer's disease with profound hearing loss due to work in the coal mines, and apathy.

On June 18, 2024, David Phillips, M.D., issued a report after reviewing medical records and medical literature. Dr. Phillips opined that the level of noise-induced hearing loss that Mr. Clark had sustained by the date of his retirement in 1998 would not have any direct impact on his development of dementia. Dr. Phillips stated that if there is any association between Mr. Clark's hearing loss and dementia, it is due to the progression of

2

his hearing loss after the noise exposure had ceased. Dr. Phillips noted that Mr. Clark's hearing loss progressed to a moderately severe level in the lower frequencies and to a profound level in the higher frequencies. Dr. Phillips opined that this level of hearing loss was not caused by Mr. Clark's occupational noise exposure. Although Dr. Phillips noted an increasing body of literature that associated age related hearing loss and dementia, he noted that a direct causative effect had not been established. Dr. Phillips also concluded that it was impossible to develop an association between Mr. Clark's hearing loss, dementia, and his subsequent cause of death, which was abdominal complications from the sigmoid volvulus and sepsis.

Ms. Clark submitted several medical articles including: an article from American Speech/Language/Hearing Association, defining sensorineural hearing loss as a hearing loss which happens when there is damage to the inner ear; an article entitled "Hearing Loss and Dementia: The Silent Connection," by David Martin, suggesting that the research shows that scientists are finding more and more evidence that hearing problems make a person more likely to develop dementia; an article dated January 6, 2020, entitled "Too Loud! For Too Long!", indicating that hearing loss is the third most common chronic health condition in the United States, and can cause stress, anxiety, depression, high blood pressure, heart disease, and many other health problems; an article from the National Institute of Health dated November 11, 2020, entitled "How can Hearing Loss Cause Dementia?", indicating that mounting evidence supports a link between hearing loss and dementia; an article entitled "Hearing Loss and the Dementia Connection" from Johns Hopkins/Bloomberg School of Public Health, dated November 12, 2021, indicating that hearing loss may be a cause of dementia in as many as 8% of dementia cases; and a report from Columbia University Department of Neurology entitled "Understanding How Dementia Causes Death" by Tree Minch, dated February 27, 2023, indicating that in the final stages of dementia, the neurodegenerative disease goes into the deeper parts of the brain, inhibiting basic bodily functions, such as heart rate and breathing.

On September 23, 2024, the Board affirmed the claim administrator's order rejecting the claim for fatal dependents' benefits. The Board found that the evidence does not establish that Mr. Clark's occupational hearing loss contributed in any material degree to his death. Ms. Clark now appeals the Board's order.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the

3

petitioner or petitioners have been prejudiced because the Board of Review's findings are:

(1) In violation of statutory provisions;
(2) In excess of the statutory authority or jurisdiction of the Board of Review;
(3) Made upon unlawful procedures;
(4) Affected by other error of law;
(5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

Ms. Clark argues that Mr. Clark's hearing loss is undisputed, and medical literature establishes a correlation between hearing loss and dementia. Ms. Clark further argues that the Board placed undue weight on Dr. Phillips' report and failed to consider the conflicting medical opinions of Drs. Burhanullah and Flashman. We disagree.

West Virginia Code § 23-4-10 provides for death benefits to be paid to dependents if ". . . . death results from occupational pneumoconiosis or from any other occupational disease. . . ." The Supreme Court of Appeals of West Virginia held in Syllabus Point 3 of *Bradford v. Workers' Comp. Comm'r*, 185 W. Va. 434, 408 S.E.2d 13 (1991) that, "[t]he appropriate test under W. Va. Code § 23-4-10(b) is not whether the employee's death was the result of the occupational injury or disease exclusively, but whether the injury or disease contributed to any material degree to the death."

Here, the Board determined that the evidence does not establish that Mr. Clark's occupational hearing loss contributed in any material degree to his death. The Board noted that Dr. Burhanullah indicated that Mr. Clark's hearing loss was a complicating factor of his Alzheimer's disease, but he did not suggest that the hearing loss caused dementia. The Board further noted that Dr. Phillips concluded that it was impossible to develop an association between Mr. Clark's hearing loss, dementia, and his subsequent cause of death, which was related to abdominal complications from the sigmoid volvulus and subsequent sepsis. The Board further found that, after Mr. Clark ceased working, his hearing deteriorated, but the deterioration was not attributable to occupational noise exposure.

Upon review, we conclude that the Board was not clearly wrong in finding that the evidence does not establish that Mr. Clark's occupational hearing loss, calculated at 3.66% impairment, contributed to his death in any material degree. First, we note that a substantial amount of Mr. Clark's profound hearing loss was not established to be occupationally related. Instead, as found by the Board, Mr. Clark's hearing deteriorated after he ceased

4

working and was no longer exposed to occupational noise. Finally, as the Board noted, Dr. Phillips determined that it was not possible to develop an association between Mr. Clark's hearing loss, dementia, and his subsequent death related to abdominal complications from the sigmoid volvulus and subsequent sepsis.

Ms. Clark asserts that when the "benefit of the doubt" principle is applied, causation should be found, and her benefits be granted. This is a mistaken apprehension of the applicable standard in workers' compensation cases. We note that "the burden is upon the claimant in workmen's compensation proceedings to prove his claim," and no presumption "will relieve the claimant of that overall burden." *Murphy v. St. Gobain Ceramics & Plastics, Inc.*, No. 23-ICA-447, 2024 WL 2859210, at *5 (W. Va. Ct. App. June 5, 2024), aff'd, No. 24-391, 2025 WL 855516 (W. Va. Mar. 19, 2025), citing *Meade v. State Comp. Comm'r*, 147 W. Va. 72, 79, 125 S.E.2d 771, 776 (1962). West Virginia Code § 23-4-1g provides that "[i]f, after weighing all of the evidence regarding an issue in which a claimant has an interest, there is a finding that an equal amount of evidentiary weight exists favoring conflicting matters for resolution, the resolution that is most consistent with the claimant's position will be adopted." In the case at bar, the Board did not find that an equal amount of evidentiary weight existed for each side. Instead, the Board concluded that Ms. Clark's evidence failed to provide evidence that Mr. Clark's occupational hearing loss was associated with his death from complications from sigmoid volvulus and sepsis. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order rejecting the claim for fatal dependents' benefits.

Accordingly, we affirm the Board's September 23, 2024, order.

Affirmed.

**ISSUED:** April 29, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

5